RODRIGUEZ *v.* COMPASS SHIPPING CO., LTD., ET AL.

No. 79–1977.   Argued January 12, 1981—Decided May 18, 1981*

---

*Together with *Perez* v. *Arya National Shipping Line, Ltd.,* and *Barulec* v. *Ove Skou, R. A.,* also on certiorari to the same court (see this Court's Rule 19.4).

STEVENS, J., delivered the opinion for a unanimous Court.

*Martin Lassoff* argued the cause for petitioners. On the brief was *Morris Cizner*.

*Joseph T. Stearns* argued the cause and filed a brief for respondents Compass Shipping Co., Ltd., et al. *Francis X. Byrn* argued the cause and filed a brief for respondent Ove Skou, R. A.†

---

†*Harry M. Philo, Arthur Roth, C. Arthur Rutter, Jr.,* and *John H. Klein* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging reversal.

JUSTICE STEVENS delivered the opinion of the Court.

The question presented in these three cases[1] is whether a longshoreman may prosecute a personal injury action against a negligent shipowner after his right to recover damages has been assigned to his employer by operation of § 33 (b) of the Longshoremen's and Harbor Workers' Compensation Act (Act), 33 U. S. C. § 901 *et seq.*[2]

Each petitioner is a longshoreman who was injured aboard ship in the regular course of his employment. Each asserted a claim for compensation against the stevedore by whom he was employed. Each accepted compensation from his employer pursuant to an award in a compensation order.[3] More

---

[1] Although a single petition for certiorari was filed on behalf of the three petitioners, their lawsuits proceeded independently of one another at earlier stages of the litigation. Three separate District Court opinions were issued. See *Rodriguez* v. *Compass Shipping Co.*, 456 F. Supp. 1014 (SDNY 1978); *Perez* v. *Arya National Shipping Line, Ltd.*, 468 F. Supp. 799 (SDNY 1979); *Barulec* v. *Ove Skou, R. A.*, 471 F. Supp. 358 (SDNY 1979). The Court of Appeals affirmed the decision in *Rodriguez* in a published opinion, 617 F. 2d 955 (1980), and on the same day affirmed the *Perez* and *Barulec* decisions in unpublished orders citing its opinion in *Rodriguez*. See *Barulec* v. *Ove Skou, R. A.*, 622 F. 2d 572 (1980); *Perez* v. *Arya National Shipping Line, Ltd.*, 622 F. 2d 575 (1980).

[2] Section 33 (b) of the Act provides:

"Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award." 44 Stat. (part 2) 1440, as amended, 33 U. S. C. § 933 (b).

[3] In the *Rodriguez* and *Barulec* cases, the plaintiffs and their employers agreed to settlements in informal conferences convened by the Office of Workers' Compensation Programs. Although a since-amended regulation required that such settlements be embodied in formal compensation orders, see 20 CFR § 702.315 (a) (1976), no formal orders were entered in these cases. Accordingly, the plaintiffs argued in the lower courts that the assignment provision of § 33 (b) had not been activated because they had not accepted "compensation under an award in a compensation order

than six months later,[4] each commenced an action against the shipowner alleging that the defendant had negligently caused his injury.[5] The District Courts granted motions for sum-

filed by the deputy commissioner or Board," as required by the statute. The District Courts rejected petitioners' argument, concluding that settlement agreements reached after official informal conferences were equivalent to formal orders for purposes of § 33 (b). See *Rodriguez, supra*, at 1018–1020; *Barulec*, 471 F. Supp., at 360–362. The Court of Appeals agreed. See 617 F. 2d, at 958–960. Although petitioners challenged this ruling in their petition for certiorari, our order granting the petition did not extend to this question. 449 U. S. 818. Accordingly, for purposes of our decision, we assume that their acceptance of compensation operated as an assignment under § 33 (b). Petitioner Perez apparently did not contend below that he had not accepted "compensation under an award" within the meaning of § 33 (b). See 468 F. Supp. 799 (SDNY 1979).

[4] Rodriguez filed suit approximately 32 months, Perez filed suit approximately 15 months, and Barulec filed suit approximately 1 year after accepting compensation. See 617 F. 2d, at 957; *Perez*, 468 F. Supp., at 800; *Barulec*, 471 F. Supp., at 359.

[5] The Act expressly provides that the employee is not required to elect between his right to compensation from his employer and his claim for damages against a third party. Section 33 (a), as set forth in 33 U. S. C. § 933 (a), provides:

"If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person."

Section 5 (b) of the Act, as set forth in 33 U. S. C. § 905 (b), provides:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged

mary judgment filed by the respondent shipowners on the ground that, by reason of the longshoremen's failure to bring suit within six months, their causes of action had been assigned to the stevedores who thereafter had the exclusive right to pursue the third-party claims.[6] The Court of Appeals for the Second Circuit affirmed, 617 F. 2d 955 (1980); 622 F. 2d 572 and 575 (1980),[7] and we granted certiorari to resolve the conflict with the contrary holding of the Court of Appeals for the Fourth Circuit in *Caldwell* v. *Ogden Sea Transport, Inc.,* 618 F. 2d 1037 (1980). 449 U. S. 818.[8]

There is no dispute about the parties' respective interests in either (a) a claim asserted by a longshoreman against a shipowner within the 6-month period following acceptance of a compensation award, or (b) a claim asserted by the stevedore against the shipowner after the 6-month period has elapsed. In the former situation, the longshoreman has exclusive control of the action; any recovery in excess of the amount required to pay the cost of litigation and to reimburse the employer for the statutory compensation paid pur-

---

in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

[6] In all three cases, although the District Courts rejected the contention that a stevedore's failure to pursue an assigned claim, without more, establishes a conflict of interest resulting in reassignment of the claim to the longshoreman, the plaintiffs were given an opportunity to present evidence establishing a specific conflict of interest, such as that found in *Czaplicki* v. *The Hoegh Silvercloud,* 351 U. S. 525. See *Rodriguez, supra,* at 1023; *Perez,* 468 F. Supp., at 801; *Barulec,* 471 F. Supp., at 362. Despite the opportunity to pursue further discovery, none of the plaintiffs was able to present evidence supporting his conflict-of-interest allegation, and the District Courts accordingly entered summary judgment in favor of the shipowners.

[7] See n. 1, *supra.*

[8] The Fourth Circuit issued its opinion in *Caldwell* eight days after the *Rodriguez* opinion was issued by the Second Circuit.

suant to the award belongs entirely to the longshoreman.[9] In the latter situation, the stevedore has exclusive control of the litigation; any net recovery—after the compensation award and the litigation costs have been recouped—must be shared 80% by the longshoreman and 20% by the employer.[10] The question presented by these cases is what right, if any, the longshoreman has against the third-party shipowner if he does not sue within the 6-month period and the employer

---

[9] Section 33 (f) of the Act, as set forth in 33 U. S. C. § 933 (f), provides:

"If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person."

[10] Section 33 (e) of the Act, as set forth in 33 U. S. C. § 933 (e), provides:

"Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);

"(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

"(C) all amounts paid as compensation;

"(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer."

fails to do so thereafter. Both the plain language of the statute and the history of its amendments dictate the same answer.

I

Even though the language of § 33 (b) is simple and direct, it is appropriate to begin by quoting our description last Term of the context in which it appears:

> "The Act provides a comprehensive scheme governing an injured longshoreman's rights against the stevedore and shipowner. The longshoreman is not required to make an election between the receipt of compensation and a damages action against a third person, 33 U. S. C. § 933 (a). After receiving a compensation award from the stevedore, the longshoreman is given six months within which to bring suit against the third party. 33 U. S. C. § 933 (b). If he fails to seek relief within that period, the acceptance of the compensation award operates as an assignment to the stevedore of the longshoreman's rights against the third party." *Bloomer* v. *Liberty Mutual Ins. Co.,* 445 U. S. 74, 77–78.

As is apparent, § 33 (b) plays a central role in this comprehensive legislative scheme.

The language of § 33 (b) is both mandatory and unequivocal. It provides that the acceptance of compensation under an award *"shall operate* as an assignment to the employer of *all right* of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award." 33 U. S. C. § 933 (b) (emphasis supplied).[11]

---

[11] In *Edmonds* v. *Compagnie Generale Transatlantique,* 443 U. S. 256, 269, we described § 33 (b):

"Under § 933 (b), an administrative order for benefits operates as an assignment to the stevedore-employer of the longshoreman's rights against the third party unless the longshoreman sues within six months."

The only conditions precedent to the statutory assignment are the acceptance of compensation pursuant to an award in a compensation order and the passage of the required period of six months. These conditions are admittedly satisfied in these cases.[12] The statutory assignment encompasses "all right" of the employee to recover damages from a third party. These words preclude the possibility that the assignment is only a partial one that does not entirely divest the employee of his right to sue, or that the employee and the employer possess concurrent rights to sue in the postassignment period. When the § 33 (b) assignment occurs, it transfers the employee's entire right to commence a third-party action to the employer.

Application of this plain statutory language to the undisputed facts in these cases leads to the conclusion that petitioners may not pursue their claims for damages against the respondent shipowners. Petitioners filed these actions well beyond the 6-month period following acceptance of compensation, and offered no excuse for their delay. Although their employers failed to pursue the assigned claims, the statute does not expressly require that employers pursue third-party claims, nor does it provide for relief to employees should the assigned claims lie dormant. Therefore, petitioners appear to be without a cause of action under the statute.

In an attempt to avoid the conclusion mandated by its plain language, petitioners contend that the Act should be construed either to include an unexpressed condition precedent to any effective assignment—namely, the absence of any possible conflict of interest between the employer-stevedore and the employee—or to grant the employee an implicit right to have the third-party claim reassigned if the employer fails to sue. Normally, these contentions would be foreclosed by the lack of any ambiguity in the statutory language. But the statutory language was also unambiguous in

---

[12] See nn. 3, 4, *supra.*

1956 when this Court held in *Czaplicki* v. *The Hoegh Silvercloud*, 351 U. S. 525, that § 33 (b) contained a limited exception. It therefore is appropriate to evaluate petitioners' contentions in the light of the relevant legislative history. In making this evaluation, however, we adhere to the rule that, "[a]bsent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108.

## II

As originally enacted in 1927, the Act gave an injured longshoreman the right to elect between the certain recovery of compensation from his employer without any proof of fault, or the less certain, but probably more generous, remedy of an action for damages against a negligent third party.[13] The employee's election to accept compensation under the Act effected an immediate assignment to his employer of his cause of action for negligence.[14] Under the original Act, the longshoreman could pursue either remedy but not both, and nothing more than the acceptance of compensation was required to evidence the employee's election. See, *e. g., Toomey* v. *Waterman S.S. Corp.*, 123 F. 2d 718, 721 (CA2 1941).

In 1938, Congress amended the Act to provide that the

---

[13] As originally enacted, and until 1959, § 33 (a) read:

"If on account of a disability or death for which compensation is payable under this Act the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the commission may provide, to receive such compensation or to recover damages against such third person." 44 Stat. (part 2) 1440.

[14] The original § 33 (b) provided:

"Acceptance of such compensation shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person, whether or not the person entitled to compensation has notified the deputy commissioner of his election." 44 Stat. (part 2) 1440.

acceptance of compensation would operate as an assignment only if the payment was "under an award in a compensation order filed by the deputy commissioner." [15] This procedural change was designed to protect the employee from the harsh consequences of an improvident election. [16] Although Congress thereby reduced the danger that an employee would make an election without being advised about its consequences, the 1938 amendment did nothing to mitigate those consequences once the election was made.

In 1956, this Court held that an injured longshoreman could enforce his right of action against a third party, notwithstanding his acceptance of compensation from his employer. *Czaplicki* v. *The Hoegh Silvercloud, supra.* [17] In

---

[15] From 1938 until 1959, § 33 (b) provided:

"Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person." 52 Stat. 1168.

[16] The amendment's purpose was explained in the House Report:

"The purpose of this amendment is to remove possible cause of complaint regarding the operation of the provision in subdivision (b) of section 33 in making the mere acceptance of compensation work automatically an assignment to the employer of all rights of action against the third party tort feasor. Acceptance of compensation without knowledge of the effect upon such rights may work grave injustice. The assignment of this right of action against the third party might properly be contingent upon the acceptance of compensation under an award in a compensation order issued by the deputy commissioner, thus giving opportunity to the injured person . . . to consider the acceptance of compensation from the employer with the resulting loss of right to bring suit in damages against the third party, or a refusal of compensation so as to pursue the remedy against the third party alleged to be liable for the injury." H. R. Rep. No. 1945, 75th Cong., 3d Sess., 9 (1938).

See also *Hernandez* v. *Costa Armatori, S. p. A.,* 467 F. Supp. 1064, 1066 (EDNY 1979), affirmance order, 622 F. 2d 573 (CA2 1980).

[17] In the interim between the 1938 amendment and the decision in *Czaplicki,* this Court issued two decisions of some significance to the present case. In 1946, in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, the Court concluded that an injured longshoreman could pursue a third-party

that case, both the employer and the third party allegedly responsible for the unseaworthy condition that had caused the employee's injury were insured by the Travelers Insurance Co. Because the stevedore had no interest in recovering the compensation payments that had been made by its insurance carrier,[18] and because that carrier would be responsible for both prosecuting and defending any third-party claim, no one other than the injured longshoreman had a sufficient interest in the claim to bring suit. Because of the conflict between the assignee's interest and the interest of the employee, the Court construed the Act to allow the longshoreman to enforce the third-party claim in his own name.[19] The Court

claim against a shipowner for unseaworthiness, as well as for negligence. In 1956, in *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U. S. 124, the Court held that a shipowner found liable to a longshoreman for damages in a third-party action could seek indemnification from the stevedore based upon the stevedore's contractual duty to provide workmanlike service. Congress in 1972 overruled both *Sieracki* and *Ryan Stevedoring*. See *Edmonds* v. *Compagnie Generale Transatlantique*, 443 U. S., at 262.

[18] Section 33 (i) of the Act as it read in 1956 provided that a stevedore's compensation insurer was subrogated to the stevedore's rights in the assigned claim. "Travelers, therefore, was the proper party to sue on those rights of action." 351 U. S., at 529. The subrogation provision is now § 33 (h), 33 U. S. C. § 933 (h).

[19] The Court explained its reasoning in detail:

"[T]he injured employee has an interest in his right of action even after it has been assigned. Normally, this interest will not be inconsistent with that of the assignee, for presumably the assignee will want to recoup the payments made to the employee. Since the assignee's right to recoup comes before the employee's interest, and because the assignee is likely to be in a better position to prosecute any claims against a third party, control over the right of action is given to the assignee, who can either institute proceedings for the recovery of damages against a third person, 'or may compromise with such third person either without or after instituting such proceeding.' § 33 (d), 33 U. S. C. § 933 (d). In giving the assignee exclusive control over the right of action, however, we think that the statute presupposes that the assignee's interests will not be in conflict with those of the employee, and that through action of the assignee the

did not hold that no assignment had occurred; rather, it held that under "the peculiar facts" of the case, the election and consequent assignment did not bar the employee's action.[20]

Two years after *Czaplicki,* in *Johnson* v. *Sword Line, Inc.,* 257 F. 2d 541 (1958), the Court of Appeals for the Third Circuit held that a different sort of conflict of interest would also preserve the longshoreman's right to sue a third party after accepting compensation from his employer. This Court had previously held, in *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.,* 350 U. S. 124, that a shipowner who was liable to a longshoreman could assert a claim for indemnity against the employer-stevedore. That holding inevitably created a

employee will obtain his share of the proceeds of the right of action, if there is a recovery. Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery. Since an action by Travelers would, in effect, be an action against itself, Czaplicki is the only person with sufficient adverse interest to bring suit. In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally." 351 U. S., at 531.

[20] At several points in the *Czaplicki* opinion, the Court emphasized the limited nature of its holding:

"Czaplicki's rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced. In these circumstances, we cannot agree that Czaplicki is precluded by the assignment of his rights of action from enforcing those rights in an action brought by himself." *Id.,* at 530.

"Respondents contend that since Czaplicki did not, under § 33 (a), 33 U. S. C. § 933 (a), elect to proceed against third parties, but rather chose to accept compensation, he can in no event revoke this election and maintain this suit. But, as this Court has already pointed out, 'election not to sue a third party and assignment of the cause of action are two sides of the same coin.' *American Stevedores, Inc.* v. *Porello,* 330 U. S. 446, 455. Czaplicki can bring suit not because there has been no assignment, but because in the peculiar facts here there is no other procedure by which he can secure his statutory share in the proceeds, if any, of his right of action. For the same reason, we hold that the election to accept compensation, as a step toward the compensation award, does not bar this suit." *Id.,* at 532–533.

conflict between the stevedore's interest in recouping the compensation awarded to the longshoreman and its interest in avoiding the risk of a substantially larger liability as an indemnitor. The Court of Appeals reasoned that the stevedore's potential liability under the indemnity claim authorized by *Ryan Stevedoring* had the practical effect of enlarging the conflict-of-interest rationale of *Czaplicki,* which had narrowly rested on the peculiar facts of that case, to encompass substantially every case in which a stevedore failed to bring a third-party action.[21] Accordingly, the court concluded that a conflict of interest could be presumed to exist whenever the statutory assignee failed to pursue or to reassign the assigned claim, unless that claim was obviously lacking in merit. See 257 F. 2d, at 544–546.[22]

---

[21] The Court of Appeals explained the conflict created by *Ryan Stevedoring:*

"Since any recovery by the injured employee against the shipowner could be recouped in an action by the shipowner against the stevedoring company, the practical effect of the Ryan case is to cause the employer-stevedoring companies, who may anticipate a shipowner's claim to indemnity to resist the making of any payment to the injured stevedore until an award is made, at which time assignment of the cause of action by reason of the provisions of the statute takes place. When the statutory assignment has taken place the employer-stevedoring company will then refuse to bring an action against the shipowner, and by the same token would also refuse to reassign the cause of action to the injured stevedore, for to do so might result in an eventual high award by way of indemnification against the stevedoring company and hence against the insurance carrier." 257 F. 2d., at 545.

The Court of Appeals essentially articulated in greater detail a concern expressed by Justice Black in his dissenting opinion in *Ryan Stevedoring:*

"The employer as an assignee of an employee's claim will know that if he wins a lawsuit, he loses a lawsuit." 350 U. S., at 145.

[22] Cf. *Di Somma* v. *N. V. Koninklyke Nederlandsche Stoomboot,* 188 F. Supp. 292 (SDNY 1960). This expansion of *Czaplicki* was not, however, uniformly accepted by all federal courts. Other courts rejected a broad reading of *Czaplicki* and limited the conflict-of-interest exception

The impact of *Ryan Stevedoring* upon third-party claims assigned to employers by operation of § 33 (b) was brought to the attention of Congress as well. In 1956, a House Subcommittee conducted hearings on proposed legislation that ultimately evolved into the 1959 amendments to the Act.[23] One of the bills considered by the Subcommittee was H. R. 5357, which provided, among other things, that an employee could commence a third-party suit within six months after accepting compensation, and that an employer who successfully pursued an assigned third-party claim was entitled to keep one-third of any net recovery. As explained by Congressman Zelenko, the bill's author, these provisions were designed to mitigate the problems identified in Justice Black's dissenting opinion in *Ryan Stevedoring*.[24] Other witnesses

to the peculiar situation presented in that case. See, *e. g., Sabol* v. *Merritt Chapman & Scott Corp.*, 241 F. 2d 765 (CA2 1957).

[23] See Hearings before a Special Subcommittee of the House Committee on Education and Labor on Bills Relating to the Longshoremen's and Harbor Workers' Compensation Act, 84th Cong., 2d Sess. (May 23, 24, and June 11, 1956) (House Hearings).

[24] Congressman Zelenko opened his testimony by inserting into the record a copy of the *Ryan Stevedoring* decision, which he asserted "endangered or seriously weakened" the right of longshoremen to recover from third parties. See House Hearings, at 1. Congressman Zelenko indicated that Justice Black's dissent accurately summarized the damaging effects of that decision. *Id.*, at 12. He went on to explain:

"H. R. 5357 avoids and eliminates the circumstances indicated by Judge Black where to the detriment of the employee, the employer under the present section and by reason of the Ryan decision may decide not to proceed with the third-party action." *Ibid.*

Later, in response to questioning by members of the Subcommittee, Congressman Zelenko explained the connection between H. R. 5357 and *Ryan Stevedoring* in more detail:

"I hope I have answered your question by trying to show what the situation in the Ryan case would be. That is the factual and the legal situation, and assuming we had the Ryan case pending at this time, the employer would lose any interest in proceeding with it, and the longshoreman would suffer. That is what Judge Black was talking about. Under

appearing before the Subcommittee also expressed concern about the conflict-of-interest problem created by *Ryan Stevedoring* and endorsed H. R. 5357 as an effective solution to that problem.[25]

In 1959, Congress acted to remedy the problems created by the potential conflict between the interests of the employer and the employee in prosecuting third-party claims.[26] Its solution was not to create or to define an exception to the assignment by operation of law. Rather, Congress substantially adopted the central provisions of the Zelenko bill by amending § 33 (b) to postpone the assignment by operation of law until six months after the acceptance of compensation under an award, and by amending § 33 (e) to allow an employer to retain one-fifth of the net proceeds of its suc-

---

H. R. 5357 both parties go in there and if the longshoreman chooses to go ahead, he does so; and if he does not go ahead, the employer starts a lawsuit in his own behalf only after the longshoreman has had the opportunity to do so, and he does not want to avail himself of it, then they give the employer this right of assignment automatically, so he gets the same measure of protection." House Hearings, at 15.

The Zelenko bill also provided an added incentive for employers to sue by giving them one-third of any excess recovery. See, *e. g.*, *id.*, at 12–13, 19, 43–44, 102.

[25] See, *e. g.*, *id.*, at 28, 44–45, 61–62, 72, 103–105, 106–107, 110, 115, 124–125. Cf. *id.*, at 83–84, 92–93. It should be noted that at the time of these hearings *Czaplicki* was pending before this Court. Czaplicki's attorneys participated in the hearings, and described to the Subcommittee the facts of *Czaplicki* and the Court of Appeals' decision in that case. They also informed the Subcommittee that this Court had granted Czaplicki's petition for certiorari, and that the case had been argued. See House Hearings, at 59, 62.

[26] The House Report on a predecessor of the bill that amended § 33 (b) in 1959 stated:

"Developments under the act which concerned the Subcommittee on Safety and Compensation have been . . . the automatic assignment of a third-party cause of action to the employer and the refusal by the employer to pursue the third-party claim because of a conflict of interest . . . ." H. R. Rep. No. 229, 86th Cong., 1st Sess., 3 (1959).

cessful third-party action.[27]   The effect of the 6-month provision, of course, was to give the longshoreman an unqualified right to bring a third-party action during the 6-month period. If his financial circumstances made it imperative that he accept a prompt settlement of his compensation claim, he could do so without forfeiting his right to seek a more liberal recovery from a responsible third party.   Moreover, by bringing his own action, the longshoreman could avoid the risk that his employer's potential conflict of interest—or possibly erroneous evaluation of the merits of the claim—might result in its abandonment.[28]   The amendment to § 33 (e) provided an additional incentive to the employer to sue after assignment of the claim by giving him a share in any excess recovery.

Nothing in the 1959 amendments purports to preserve the employee's right to commence a third-party suit after the 6-month period expires.   Although the amendments encourage employers to pursue assigned claims, they do not qualify the assignee's control of the cause of action after the assignment takes place.   To the contrary, the legislative history indi-

---

[27] At the same time, Congress amended § 33 (a) to provide expressly that the employee need not elect between his statutory right to compensation from his employer and his claim against a third party.   See n. 5, *supra.*

[28] The Senate Report contained the following evaluation of the bill amending § 33 (b):

"The bill as amended by the committee would revise section 33 of the act so as to permit an employee to bring a third-party liability suit without forfeiting his right to compensation under the act. . . .   The committee believe that in theory and practice this is [a] sound approach to what has been a difficult problem.   As embodied in the committee amendment, the principle would be applied with due recognition of the equities and rights of all who are involved.

". . . In the event that an employee does not elect to sue for damages within 6 months of the compensation award the employer is assigned the cause of action."   S. Rep. No. 428, 86th Cong., 1st Sess., 2 (1959).

cates that once the 6-month period expires, the employer possesses complete control of third-party claims.[29]

This history forecloses the argument that Congress did not intend an assignment of a third-party claim to be effective unless there was an absence of any potential conflict of interest between the assignee and the longshoreman. The statutory language provides a different and clearly defined solution to the conflict-of-interest problem that had been created by *Ryan Stevedoring*.[30]   Congress unequivocally made the choice in favor of first giving the employee exclusive control of the cause of action for a 6-month period and then giving the employer exclusive control thereafter, instead of opting for any form of simultaneous joint or partial control. The simple standard set forth in § 33 (b) protects the interests of both employees and employers, and is consistent with the general policy of the Act to encourage the prompt and efficient administration of compensation claims. See *Potomac Electric Power Co.* v. *Director, Office of Workers' Compensation Programs*, 449 U. S. 268, 282.

## III

Although the assignment at the end of the 6-month period occurs automatically, the Court of Appeals for the Fourth Circuit has held that the employee retains a right after assignment to compel the assignee either to bring a third-party suit or to reassign the cause of action to the employee in response to a formal request to do so. See *Caldwell* v. *Ogden Sea Transport, Inc.*, 618 F. 2d 1037 (1980). The court "readily found" the procedural mechanism for implementing this nonstatutory right to a reassignment, *id.*, at 1046, but we

[29] See *id.*, at 2–3; H. R. Rep. No. 229, *supra*, at 3–4. See also House Hearings, at 15, 19–20, 44–45.

[30] Whether the statutory language provides the exclusive solution for unusual conflict-of-interest problems, such as that identified in *Czaplicki*, is a question that is not presented on the facts of these cases. We accordingly do not decide whether, or to what extent, *Czaplicki* survived the 1959 amendments.

find no evidence that Congress created either the substantive right itself or the procedural rights that the court discerned.

The predicate for the Fourth Circuit's analysis was an assumption that Congress did not intend to allow the longshoreman to lose his rights against a third party simply because (a) he failed to take any action within six months and (b) his employer decided not to sue the third party thereafter.[31] To avoid the "practical problem" presented in such a situation, the court fashioned a "solution" that the Act "does not specifically provide." *Id.*, at 1045. We are persuaded that the reason Congress did not specifically provide the solution which the court readily found is that Congress did indeed intend to require the employee either to act promptly or to accept the consequences of an assignment of

---

[31] "Ordinarily, therefore, it is likely that the interests of both longshoreman and assignee in having their substantive rights pursued and of the third person in facing a single action will be achieved under LHWCA.

"But LHWCA does not yet deal directly with certain practical problems that may interrupt or wrench these expectations. These can arise whenever by design or inadvertence the longshoreman fails during the statutory period to prosecute the claim while the right of action is exclusively his. Following this failure, the assignee may, for a variety of reasons, not then itself prosecute the claim. It may not consider a claim thought meritorious by the longshoreman to be sufficiently so to warrant the expense of litigation. It may have a specific conflict of interest that militates against prosecuting the claim. It may simply be dilatory to the point that the claim is threatened by a limitations bar. Under all of these, and to precisely the same degree under all, the longshoreman faces a practical problem for which LHWCA provides no direct solution: forcing action by the assignee, or somehow retrieving the right of action. While LHWCA does not specifically provide the solution, it certainly cannot be thought to have been intended by Congress that the longshoreman's substantive right might be lost simply through inaction of the assignee until the claim is barred from prosecution by anyone. What is needed is a solution that adequately protects the assignee's first right of exclusive action but that also protects the longshoreman's substantive right against loss through inaction of the assignee for whatever reason." 618 F. 2d, at 1045.

his claim to the employer.[32] One of the consequences of such an assignment is the risk that the employer will choose not to sue. The comprehensive character of the procedures outlined in the Act precludes the fashioning of an entirely new set of remedies to deal with an aspect of a problem that Congress expressly addressed.[33] The fact that parties sometimes fail to assert meritorious claims within the period authorized by law is not a sufficient reason for refusing to enforce an unequivocal statutory bar.

## IV

Finally, relying upon *Edmonds* v. *Compagnie Generale Transatlantique,* 443 U. S. 256, petitioners argue that Congress' failure to amend § 33 (b) in 1972, when the Act was thoroughly re-examined, evidences implicit congressional approval of the decision of the Court of Appeals for the District of Columbia Circuit in *Potomac Electric Power Co.* v. *Wynn,* 120 U. S. App. D. C. 13, 343 F. 2d 295 (1965) (*per curiam*). In that case, the court held that a longshoreman who has accepted compensation under an award may maintain a third-party action whenever it becomes evident that his employer has no intention to file suit on the assigned claim. *Id.,* at 16, 343 F. 2d, at 298. See also *Joyner* v. *F & B Enterprises, Inc.,* 145 U. S. App. D. C. 262, 264, 448 F. 2d

---

[32] The District Court in the *Perez* case aptly evaluated the so-called "problem" created by an employer's failure to sue after statutory assignment of the employee's cause of action:

"[W]hatever the consequences of a failure to sue, an employee who fails to sue within six months of accepting compensation under an award . . . is as responsible for that failure as an employer who neglects, for whatever reason, to pursue an assigned claim." 468 F. Supp., at 802.

[33] "Consequently, as we have done before, we must reject a 'theory that nowhere appears in the Act, that was never mentioned by Congress during the legislative process, that does not comport with Congress' intent, and that restricts . . . a remedial Act . . . .' *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S., at 278–279." *Edmonds* v. *Compagnie Generale Transatlantique,* 443 U. S., at 271.

1185, 1187 (1971). The court construed the 1959 amendments as enlarging the employee's protection, and considered the rationale of *Czaplicki* to apply whenever a potential conflict of interest is present. In its judgment, the employer's failure to sue was sufficient evidence of a conflict to justify an independent action by the employee, notwithstanding the assignment provisions in the Act.[34]  120 U. S. App. D. C., at 16, 343 F. 2d, at 298.

For reasons already stated, we are satisfied that that opinion did not correctly construe the 1959 amendments.[35]  It is true that Congress did not expressly disclaim that case in 1972, but that legislative inaction does not modify the plain terms of the 1959 amendments. Nor did Congress expressly endorse the *Wynn* decision. More importantly, the statu-

---

[34] Petitioners suggest that such an automatic rule is justified because of a stevedore's normal reluctance to file suit against a customer. However, in rejecting a similar conflict-of-interest argument, the District Court in *Hernandez* v. *Costa Armatori, S. p. A.,* 467 F. Supp., at 1067–1068, identified the flaw in this reasoning:

"[T]his is not the kind of matter that Congress could have viewed as sufficient to invalidate the assignment. Such a conflict has always been inherent in the statutory scheme. Presumably every stevedore would prefer not to give offense to its customer.

.         .          .          .          .

"Plaintiff has thus referred only to 'conflicts of interest' of which Congress was aware in enacting the statute. To allow them as exceptions to the statutory assignment would be to read Section 933 (b) out of the Act."

In addition, where, as is often the case, the stevedore's insurer is subrogated to the stevedore's interest in an assigned claim, see 33 U. S. C. § 933 (h), this potential conflict probably will not be of much significance. The insurer is unlikely to sacrifice a meritorious claim for fear of antagonizing a customer of the stevedore.

[35] Nor did it correctly construe *Czaplicki.* As discussed *supra,* at 605–607, that decision was narrowly drawn to redress certain inequities that arose from "the peculiar facts" of that case. *Czaplicki* did not hold that the § 33 (b) assignment could be avoided whenever an employer failed to pursue an assigned claim.

tory interpretation announced in *Wynn* can hardly be compared to the well-established rule of maritime law at issue in *Edmonds*. There is no reason to believe that "Congress has relied upon conditions" that *Wynn* created. *Edmonds, supra,* at 273.[36] In fact, the statutory changes adopted in 1972 are entirely consistent with our interpretation of § 33 (b). Moreover, those changes remind us that one of the purposes of the Act is to minimize the need for litigation as a means of providing compensation for injured workmen. See *Bloomer,* 445 U. S., at 86.

Three of the 1972 Amendments are pertinent. First, the level of benefits was substantially increased, thereby increasing the likelihood that the statutory compensation recoverable without proof of fault would be adequate.[37] Second, the shipowner's right to seek indemnity from the stevedore under *Ryan Stevedoring* was eliminated, thereby removing a category of litigation from the courts, placing more definite limits on the stevedore's insurance costs, and removing a potential source of conflict between the interests of employers and employees.[38] Third, the shipowner's nearly absolute liability for unseaworthiness was eliminated, thereby further narrowing the area of potential litigation and increasing the relative importance of statutory awards as the favored method of compensation.[39] See generally *Scindia Steam Navigation Co.*

---

[36] Indeed, shortly after *Wynn* was decided, the Fifth Circuit concluded that, while *Czaplicki* was still good law, it should be narrowly applied to specific conflicts of interest identified on a case-by-case basis. See *McClendon* v. *Charente Steamship Co.,* 348 F. 2d 298, 301–303 (1965). The court expressly declined to adopt the automatic rule applied in *Wynn.* See 348 F. 2d, at 303.

[37] See *Director, Office of Workers' Compensation Programs* v. *Rasmussen,* 440 U. S. 29, 32–35.

[38] See *Edmonds* v. *Compagnie Generale Transatlantique, supra,* at 262.

[39] In its explanation of the reasons for eliminating the unseaworthiness remedy, the House Report accompanying the 1972 Amendments stated: "The Committee heard testimony that the number of third-party actions brought under the *Sieracki* and *Ryan* line of decisions has increased sub-

v. *De Los Santos, ante,* at 164–165. In making these changes, Congress necessarily balanced the conflicting interests of the vessel owner, the stevedore, and the longshoreman. As with other problems of interpreting the intent of Congress in fashioning various details of this legislative compromise, the wisest course is to adhere closely to what Congress has written.[40] The meaning of § 33 (b) is plain and should be respected.

V

In sum, we conclude that the Court of Appeals in these cases correctly held that § 33 (b) precludes petitioners from pursuing their third-party claims. Whatever the continued validity of our decision in *Czaplicki,* a question we need not and do not decide today,[41] these cases do not involve "the

stantially in recent years and that much of the financial resources which could be better utilized to pay improved compensation benefits were now being spent to defray litigation costs. Industry witnesses testified that despite the fact that since 1961 injury frequency rates have decreased in the industry, and maximum benefits payable under the Act have remained constant, the cost of compensation insurance for longshoremen has increased substantially because of the increased number of third party cases and legal expenses and higher recoveries in such cases. The Committee also heard testimony that in some cases workers were being encouraged not to file claims for compensation or to delay their return to work in the hope of increasing their possible recovery in a third party action." H. R. Rep. No. 92–1441, p. 5 (1972).

[40] "Congress has put down its pen, and we can neither rewrite Congress' words nor call it back 'to cancel half a Line.' Our task is to interpret what Congress has said . . . ." *Director, Office of Workers' Compensation Programs* v. *Rasmussen, supra,* at 47.

[41] As our analysis indicates, the 1959 and 1972 Amendments have substantially undercut the basis for the *Czaplicki* exception to § 33 (b). The Court was troubled in *Czaplicki* because under the Act in 1956 there was "no other procedure" by which a longshoreman could enforce his rights against a third party where the employer failed to sue due to a conflict of interest. 351 U. S., at 532–533. After the 1959 amendments, there is such a procedure: the employee may simply file his own third-party suit within six months after accepting compensation.

Similarly, to the extent that *Czaplicki* and its progeny sought to

peculiar facts" on which *Czaplicki* was based. Rather, petitioners essentially have relied upon conflicts inherent in the statutory scheme and in the relationships among longshoremen, stevedores, and shipowners. The notion adopted in some post-*Czaplicki* decisions that a conflict of interest may be presumed whenever an employer does not sue on an assigned claim is simply untenable in light of the plain statutory language and the history of the 1959 and 1972 Amendments. We leave for another day the question whether an assignment under § 33 (b) will bar a longshoreman's third-party action if there is specific evidence of a serious conflict of interest Congress could not have foreseen when it enacted and amended § 33.

The judgments of the Court of Appeals are

*Affirmed.*

---

mitigate the conflict of interest created by *Ryan Stevedoring,* the 1972 Amendments eliminate the need for a judicially created exception to § 33 (b):

"[B]efore the [1972] Amendments, the longshoreman and the stevedore had adverse interests in the third-party action: if the longshoreman were successful in that suit, the shipowner frequently would attempt to require the stevedore to make payment of amounts due the longshoreman. With the abolition of the shipowner's cause of action, the stevedore and the longshoreman had a common interest in the longshoreman's recovery against the shipowner." *Bloomer* v. *Liberty Mutual Ins. Co.,* 445 U. S. 74, 84–85.

See also *Valentino* v. *Rickners Rhederei, G. M. B. H.,* 552 F. 2d 466, 470 (CA2 1977).