■ VITO ASARO, Appellant, v UNIVERSAL CARGO CARRIERS, LTD., et al., Respondents. — Order of the Supreme Court, New York County (Goldman, J.), entered October 12, 1982, granting the motion of the defendants for summary judgment dismissing the complaint, affirmed, without costs. The dissent fairly states the facts but misinterprets the state of the law since the 1959 amendment to the Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 933, subd [b]). After collecting workers' compensation benefits, the plaintiff had six months to institute his own suit. Considering the fact that the injury occurred in December, 1973, and the final payment of compensation was made in May, 1975 and that an additional six months was provided for the plaintiff to commence his own suit, there is no unfair limitation on the time for the plaintiff to proceed. *Rodriguez v Compass Shipping Co.* (451 US 596), relied on by Special Term, is authority for this proposition. There was never any doubt about the fact that the defendant, Hellenic Lines, Ltd., was both the owner-operator of the ship and the stevedore-employer of the plaintiff. Kupferman, J. P., Asch, Silverman and Milonas, JJ., concur in both the memorandum for the list and the concurring memorandum of Justice Asch. Kassal, J., dissents in a memorandum, both as follows:

Asch, J. (concurring). I concur in the result reached by the majority. The dissent correctly quotes the Supreme Court in *Rodriguez v Compass Shipping Co.* (451 US 596, 617-618) to the effect: "Whatever the continued validity of our decision in *Czaplicki*, a question we need not and do not decide today, these cases do not involve 'the peculiar facts' on which *Czaplicki* was based". However, I believe that it misreads the effect of *Rodriguez* on the rationale set forth in *Czaplicki v Hoegh Silvercloud* (351 US 525). The very quote relied upon by the dissent is limited by a footnote appended to it, however. In the note, Justice Stevens unequivocally stated (p 617, n 41): "As our analysis indicates, the 1959 and 1972 Amendments have substantially undercut the basis for the *Czaplicki* exception to § 33(b). The Court was troubled in *Czaplicki* because under the Act in 1956 there was 'no other procedure' by which a longshoreman could enforce his rights against a third party where the employer failed to sue due to a conflict of interest * * * After the 1959 amendments, there is such a procedure: the employee may simply file his own third-party suit within six months after accepting compensation." It seems apparent, therefore, that the decision in *Czaplicki* was prompted by the fact that, at that time, an employee's acceptance of a compensation award affected an *immediate* assignment of his claim to his employer. In an attempt to ameliorate this problem, the Supreme Court gave Czaplicki the right to sue despite the preclusions contained in title 33 (§ 933, subd [b]) of the United States Code. Since the decision in *Czaplicki*, Congress has acted. It has incorporated a six-month grace period within which the longshoreman could evaluate his options

and decide what he wished to do. If the longshoreman elects not to pursue his claim, it will be assigned to the employer. "We are persuaded * * * that Congress did indeed intend to require the employee either to act promptly or to accept the consequences of an assignment of his claim to the employer. One of the consequences of such an assignment is the risk that the employer will choose not to sue. The comprehensive character of the procedures outlined in the Act precludes the fashioning of an entirely new set of remedies to deal with an aspect of a problem that Congress expressly addressed. The fact that parties sometimes fail to assert meritorious claims within the period authorized by law is not a sufficient reason for refusing to enforce *an unequivocal statutory bar.*" (*Rodriguez v Compass Shipping Co., supra,* at pp 613-614; emphasis added.) The Congress when it enacted and amended the statute certainly could have created exceptions for situations such as that raised in *Czaplicki* or other serious conflicts of interest. It did not choose to do so, electing another method instead, i.e., a six-month grace period for the longshoreman to bring his own action. "As with other problems of interpreting the intent of Congress in fashioning various details of this legislative compromise, the wisest course is to adhere closely to what Congress has written. The meaning of § 33(b) is plain and should be respected" (*Rodriguez v Compass Shipping Co., supra,* p 617).

Kassal, J. (dissenting). The question posed on this appeal is whether, under the current provisions contained in the Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 901 *et seq.*), an injured employee retains a right to proceed directly against a responsible shipowner after expiration of the six-month period following acceptance of compensation benefits where, as here, the shipowner is also the stevedore-employer and, for that reason, fails to institute an action to effect a recovery on behalf of the injured employee. On December 28, 1973, plaintiff, a longshoreman, was injured while working aboard a vessel, the *M. V. Hellenic Star,* owned and operated by defendants. The accident occurred while plaintiff was performing stevedoring work on board the vessel, docked at the 57th Street Pier, Brooklyn, New York. At the time of the occurrence, defendant Hellenic Lines, Ltd. (Hellenic), was both the owner-operator of the ship and the stevedore-employer of the plaintiff. Following the accident, plaintiff received workers' compensation benefits, provided pursuant to section 901 *et seq.* of title 33 of the United States Code. Total benefits in the sum of $10,628.84 were paid, with the final payment made by Hellenic on May 8, 1975. This action was commenced against Hellenic as the owner of the vessel on March 25, 1976, 10½ months after the final compensation payment had been made. A second summons was served September 16, 1976, naming Universal Cargo Carriers, an affiliated company. In their answers, prepared and served by the same attorneys on August 9, 1979, defendants included an identical "SETOFF AND/OR COUNTERCLAIM" that they were entitled to a "credit against any recovery of plaintiff against defendant for all sums paid to plaintiff as compensation and medical expenses." Neither answer contained any defense challenging plaintiff's standing or capacity to sue. The action was noticed for trial on December 18, 1981. On July 6, 1982, almost three years after service of its responsive pleading, defendant moved to dismiss the complaint upon the ground that plaintiff's failure to institute suit within six months after his acceptance of a compensation award precluded him from proceeding in this action under subdivision (b) of section 933 of the Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 933, subd [b]). In directing dismissal of the complaint, Special Term found dispositive plaintiff's failure to institute suit within the six-month period, concluding that, pursuant to title 33 (§ 933, subd [b]) of the United States Code, the employee's rights had been assigned by operation of law to the employer,

who had the sole right and discretion to proceed as against third parties. Under the circumstances of this case, I cannot agree that the four and one-half month delay extinguished the right of the injured employee to proceed as against the shipowner, where the owner of the ship is also the stevedore-employer and would obviously never pursue litigation against itself. The effect of the determination, affirmed by the majority here, would wholly nullify any right by an injured employee to gain effective and complete redress by applying a relatively short period within which to institute suit, on penalty of forfeiture of any right to proceed thereafter. Clearly, this was not the intention of Congress. While the statute affords the employee six months within which to sue, following which the right to proceed against third parties was to be vested in the employer, the provision directs that any recovery be apportioned between the employer, to afford reimbursement for workers' compensation paid, and the injured employee, as compensation for the injuries sustained. Thus, the assignment does not substantially affect the right of the injured employee to be compensated. It merely shifts to the employer the responsibility for taking affirmative action against the ultimate tort-feasor. The obvious incentive to the employer is the recovery of its compensation lien. However, in a case where more serious injuries and greater damages are alleged than the extent of workers' compensation afforded and where the third-party shipowner is also the stevedore-employer, there is a clear conflict of interest. The reluctance by the employer to proceed against itself in its capacity as shipowner would, as a practical matter, obliterate the employee's right to be compensated since it is clear no action would ever be brought. The Longshoremen's and Harbor Workers' Compensation Act provides in subdivision (a) of section 933 that an employee's acceptance of compensation benefits does not constitute an election not to proceed as against third persons who may be found liable in damages. Title 33 (§ 933, subd [b]) of the United States Code provides: "Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award." Subsequent to the six-month period, the employer, by assignment, is afforded the sole right to either institute proceedings to recover damages or compromise the claim with such third persons alleged to be responsible (US Code, tit 33, § 933, subd [d]). The act further delineates the recovery to be accorded to both the injured employees and to the employer who had provided compensation benefits as follows: "(e) Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows: (1) The employer shall retain an amount equal to — (A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board); (B) the cost of all benefits actually furnished by him to the employee under section 907 of this title; (C) all amounts paid as compensation; (D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and (2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer." *Czaplicki v Hoegh*

*Silvercloud* (351 US 525) was decided prior to the 1959 amendment to the Longshoremen's and Harbor Workers' Compensation Act, when the statute directed that the acceptance of compensation automatically conferred upon the employer the right to proceed against responsible third parties. In *Czaplicki* the employer was insured by the same insurance carrier who had insured the third party alleged to be responsible for the accident. While recognizing that the acceptance of a compensation award effected an assignment to the employer by operation of law, the Supreme Court took cognizance (p 531) that such an assignment did not preclude the employee from any remedy since any recovery obtained was apportioned between the assignee and the employee: "In a very real sense, therefore, the injured employee has an interest in his right of action even after it has been assigned. Normally, this interest will not be inconsistent with that of the assignee, for presumably the assignee will want to recoup the payments made to the employee. Since the assignee's right to recoup comes before the employee's interest, and because the assignee is likely to be in a better position to prosecute any claims against a third party, control over the right of action is given to the assignee, who can either institute proceedings for the recovery of damages against a third person, 'or may compromise with such third person either without or after instituting such proceeding.' § 33(d), 33 U.S.C. § 933(d)." Despite the clear provisions contained in the act as it then existed, the Supreme Court created an exception to preserve the employee's right to proceed against a responsible third party even where the six-month period has expired where there was a conflict of interest, sufficient to conclude that the interests of the employee would not be pursued. Thus, the *Czaplicki* court conditioned the assignability of the claim to situations where the assignee's interest would not conflict with those of the employee. The court there recognized that, inasmuch as the same insurer insured the employer as provided coverage to the third party, it was highly unlikely that any action would be brought. Accordingly, it was concluded realistically that to give effect to the assignment would defeat any right or interest of the employee in obtaining any recovery at all. "In giving the assignee exclusive control over the right of action, however, we think that the statute presupposes that the assignee's interests will not be in conflict with those of the employee, and that through action of the assignee the employee will obtain his share of the proceeds of the right of action, if there is a recovery. Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery. Since an action by Travelers would, in effect, be an action against itself, Czaplicki is the only person with sufficient adverse interest to bring suit. In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally." (351 US, at p 531.) Subsequently, the Longshoremen's and Harbor Workers' Compensation Act was amended in 1959 to postpone for six months the assignment of the claim to the employer (Pub L 86-171, 73 US Stat 391). The 1959 amendment also added inducement to the employer to pursue a claim against a third party by increasing the apportionment to the employer of the recovery in such third-party action to the extent of giving the employer an additional 20% of the recovery in addition to costs and expenses incurred, compensation payments made and the present value of compensation payments to be made in the future. In 1972, there were further amendments to eliminate unseaworthiness claims, under which a shipowner was held responsible as indemnitor on a breach of warranty basis (Pub L 92-576, 86 US Stat 1262). *Rodriguez v Compass Shipping Co.* (451 US 596), relied upon by Special Term, has no real bearing on the issue. In that case, as here, the injured employee did not

institute suit within the six-month period, the Supreme Court concluding that the failure to do so resulted in an assignment to the employer of any right to proceed. However, in *Rodriguez,* the third party alleged to be responsible·was neither affiliated with nor related to the stevedore-employer. The injured employee in that case had contended that, upon the failure of the employer to institute suit, the right to proceed should be reassigned to the injured long-shoreman to enforce the third-party claim in his own name. The Supreme Court disagreed, finding that one of the consequences of the assignment provided for by subdivision (b) of section 933 was that the employer would choose not to sue. Thus, the court found petitioner to be without a cause of action under the statute, albeit the employer failed to pursue the assigned claim. However, unlike our case, *Rodriguez* (pp 617-618) did not involve any issue of conflict of interest as was present in *Czaplicki.* In discussing the history of the act and the underlying rationale of *Czaplicki,* the Supreme Court did not foreclose the continued efficacy of the *Czaplicki* principle when there was a conflict of interest, observing, "[w]hatever the continued validity of our decision in *Czaplicki,* a question we need not and do not decide today, these cases do not involve 'the peculiar facts' on which *Czaplicki* was based." All that *Rodriguez* decided was that no presumption of a conflict would exist merely by reason of the failure of the employer to institute suit after the right of the employer to proceed had been assigned by operation of law. Subsequent decisions have clearly held that the burden of proof in demonstrating the existence of such a conflict is upon the longshoreman, not the shipowner (*Perez v Arya Nat. Shipping Line,* 468 F Supp 799). The absence of a conflict clearly distinguishes the situation in *Rodriguez* from that in this case. Inasmuch as the employer here is also the shipowner alleged to be responsible, it is patently clear that no action would ever be brought to give redress to the third-party claim by the injured employee. Under the circumstances, Congress could not have intended to foreclose the employee where there is no question but that no action would be brought on his behalf. There is an actual, demonstrable conflict of interest where an employee is injured by the negligence of a shipowner, which serves in a dual capacity as its own stevedoring company. Thus, in *Susino v Hellenic Lines* (551 F Supp 1080), involving essentially the same issue as that before us on this appeal, District Judge Bramwell concluded that the conflict sufficed to preserve the right of the injured employee following the passage of the six-month period. In that case, as here, an injured long-shoreman had brought an action against the owner of the vessel, which was also the longshoreman's stevedore-employer. The action in *Susino* was com-menced 18 months after the final compensation award. Finding *Rodriguez* inapplicable and *Czaplicki* analogous, the court, in reliance upon the earlier Supreme Court opinion, held (p 1083), "where, as here, an actual and demon-strable conflict of interests exists between the employer and the third party so that the former could never be expected to sue the latter, the injured long-shoreman does not lose his right to sue upon the expiration of the six month statutory period." I agree with the reasoning by Judge Bramwell and would apply the same principle to this case to preserve the right of the employee to proceed. While the statutory provisions contained in section 933 of title 33 of the United States Code are clear and unmistakable as to the assignment to the employer by operation of law six months after acceptance of the compensation award, under the circumstances, the result reached both at Special Term and by the majority on this appeal would be grossly unjust and contrary to the legislative purpose. There is no question but that the statute does not exist as a Statute of Limitations. It does operate as an assignment of the right to sue, but preserves in the employee his interest in any recovery obtained in the action to

be brought against the third party, whether that action be commenced by the employee or by the employer on his behalf. (US Code, tit 33, § 933, subd [e].) However, where the employer serves in the dual capacity as stevedore and shipowner and where the negligence of the owner in that capacity is alleged to be the cause of the occurrence, unquestionably the employer would never proceed against itself. To preclude the employee in such a case would give greater protection to the employer than could have been intended by Congress. The very same policy and legal considerations which militated in favor of the disposition in *Czaplicki* apply with equal force in our case to sustain the right of the employee to seek redress directly against the alleged negligent shipowner after six months but within the Statute of Limitations. Moreover, the procedural history in this case clearly demonstrates a waiver by defendants of any objection to plaintiff's standing or capacity to sue. As observed, defendants' answers served more than three years after institution of suit and almost three years prior to the motion to dismiss, did not incorporate any objection to the standing of the employee. In separate but identical responsive pleadings, defendants interposed as "DEFENSES" that any injury sustained by plaintiff resulted, not from the negligence of the defendant, but was caused in whole or in part by the negligence of the plaintiff "or was due to the negligence of the plaintiff's employer". As stated, also included, as a setoff or counterclaim, was the claim by defendant for a credit against any recovery to plaintiff for all sums paid to the employee as compensation and for medical expenses. At no time, either in the answer or in the preliminary pretrial proceedings, did defendants raise any issue with respect to the standing of the employee. It was not until this motion was made, six years after the action had been brought, almost three years after service of their answer and almost seven months after the case was noticed for trial, that defendants for the first time sought to challenge the standing of plaintiff. Thus, under the circumstances, the unexplained failure to raise the issue may properly be viewed as a waiver of the objection, an additional basis for this decision. Accordingly, the order, Supreme Court, New York County (Morris Goldman, J.), entered October 12, 1982, granting defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, the motion denied and the complaint reinstated.