**Ronald N. NEWKIRK,**
**Plaintiff-Appellant**
**Cross-Appellee,**

v.

**KEYES OFFSHORE, INC., et al.,**
**Defendants-Appellees,**

**Keyes Offshore, Inc., and Aminoil, Inc.,**
**Defendants-Appellees Cross-Appellants.**

**No. 85–3158.**

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1986.

Gerald L. Burnett, John F. Frederickson, Shreveport, La., for plaintiff-appellant cross-appellee.

George M. Gilly, Winston Edward Rice, New Orleans, La., for Gibb.

George J. Nalley, Jr., New Orleans, La., for Intern. Mooring and Marine.

George E. Jurgens, III, Andrew Podolnick, New Orleans, La., for Aminoil USA Inc. and Keyes Offshore.

Before JOHNSON, JOLLY, Circuit Judges, and MITCHELL *, District Judge.

E. GRADY JOLLY, Circuit Judge:

Newkirk appeals from a summary judgment entered in favor of the defendants based on section 33(b) of the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), which allowed him only six months from the date of his settlement with his employer to institute this suit against third parties causing his injuries.[1] Because we find that no genuine issue of · material fact prevented the district court from granting the summary judgment, and because we find that this case is controlled by the Supreme Court's decision in *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), we affirm.

I

Newkirk was injured on May 5, 1980, while employed by defendant International Mooring and Marine, Inc. (IMM). Newkirk fell down a flight of stairs on the jack-up barge, Keyes 150, which is owned and operated by the appellant Keyes Offshore, Inc.[2] Newkirk contends that he suffered head and shoulder injuries from this fall.

Throughout the first year following the accident, Newkirk complained of pain in his right shoulder and sought treatment from a flock of physicians. In the meantime, Newkirk's employer, IMM, made voluntary compensation payments to Newkirk.

Newkirk, complaining of headaches and blurred vision which he attributed to the accident, consulted a neurosurgeon in March 1981, approximately one year after the accident. The neurosurgeon diagnosed communicating hydrocephalus and to alleviate the build-up of cerebral spinal fluid, inserted a shunt in April 1981.

On May 5, 1981, the neurosurgeon wrote to the Department of Labor (DOL) advising the claims examiner that Newkirk's head injury was probably caused by the May 5, 1980 accident. IMM's insurance carrier therafter contested responsibility for the head injury. The DOL claims examiner documented IMM's denial of responsibility and so advised Newkirk's attorney.

On April 27, 1982, however, Newkirk accepted payment of $15,000 under an agreed settlement with IMM. A formal compensation order was entered by a deputy commissioner of the DOL on April 27, 1982, specifically approving the parties' settlement

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. Section 33(b) of the LHWCA provides:

   Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

2. Newkirk had been assigned to assist in certain construction operations on a fixed offshore platform owned by defendant Aminoil Incorporated and located in the Gulf of Mexico. The platform workers, including Newkirk, ate their noon meal aboard the jack-up barge Keyes 150 which was adjacent to the fixed structure.

agreement. The formal compensation order provided in pertinent part:

8. That a dispute exists between the parties as to the nature and extent of the claimant's disability and his entitlement to further compensation if any;

9. That the parties have agreed to resolve their differences by the payment of $15,000.00 to the claimant herein, in one lump sum without discount.

. . . .

In accordance with the provisions of Section 8(i)(A) of the Act the Deputy Commissioner finds that it is in best interests of the claimant to approve an agreed settlement in the amount of $15,000.00, discharging the liability of the employer and their insurance carrier for the payment of further compensation.

. . . .

It is hereby ordered that the employer and their insurance carrier shall pay forthwith all amounts due in accord with the provisions of this award. Upon payment of said Award the case of Ronald N. Newkirk will be closed.

Newkirk and this attorney both executed the compensation order. In the next thirteen months neither took further action with regard to Newkirk's injury claims.

On May 5, 1983, Newkirk filed the instant personal injury suit in the United States District Court for the Eastern District of Louisiana to pursue third-party claims against Keyes Offshore and Aminoil Incorporated (appellees).[3] On January 23, 1985, the district court granted the appellees' motion for summary judgment. The district court concluded that "since [Newkirk] failed to assert his claims against [the appellees] within six months after receiving an award of compensation, plaintiff is now precluded by 33 U.S.C. § 933(b) from pursuing those third-party tort claims." Newkirk filed a timely notice of appeal.

## II

### A.

On appeal, Newkirk raises two challenges to the district court's grant of summary judgment. First, Newkirk contends that a material issue of fact exists regarding whether the settlement agreement was intended to cover both his shoulder and head injuries. Second, under principles stated in *Czaplicki v. S.S. Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), Newkirk contends that he is entitled to pursue his third-party tort claims regardless of the existence of a section 33(b) assignment. In the event that this court reverses the district court's grant of summary judgment, the appellees cross-appeal the district court's denial of the appellees' motion to strike Newkirk's demand for a jury trial.

### B.

Newkirk contends that a material issue of fact exists regarding whether a section 33(b) assignment has been made of Newkirk's claims involving his head injury. According to Newkirk, the formal compensation order applied only to Newkirk's claims

---

**3.** Newkirk also sued his employer IMM based on a Jones Act claim. The district court granted partial summary judgment dismissing Newkirk's Jones Act count based on the court's conclusion that Newkirk was not a "seaman." The court also dismissed Newkirk's claim against IMM based on its conclusion that Newkirk's sole remedy against IMM had been under the LHWCA and that remedy had been extinguished by the April 27, 1982, formal compensation order. Newkirk did not contest dismissal of IMM from this action. However, in Newkirk's notice of appeal, he includes the district court's judgment dismissing IMM. Although IMM has filed a brief on appeal in support of the district court judgment, Newkirk has not contested by briefing any issues concerning the propriety of IMM's dismissal from the instant case. Thus, for the purposes of this opinion, "appellees" refers to Keyes Offshore and Aminoil Incorporated. *See Morrison v. City of Baton Rouge*, 761 F.2d 242, 244 (5th Cir.1985) ("contentions not briefed may be considered waived and will not be entertained on appeal.").

This action was instituted by Newkirk under the admiralty and maritime jurisdiction of the federal courts, under Fed.R.Civ.P. 9(h) and alternatively, upon diversity jurisdiction, with an amount in controversy in excess of $10,000.

relating to his shoulder injury. Newkirk argues that the dispute over the intended reach of the compensation order rendered summary judgment inappropriate.

■ We find, however, that the district court properly concluded, based upon proof submitted in support of summary judgment, that no material fact existed disputing that the compensation order encompassed Newkirk's entire personal injury claim arising out of the May 1980 accident. Although Newkirk vigorously argues that the absence of any express reference to his head injury shows that the formal compensation order related only to his shoulder injury, the express language of the compensation order indicates otherwise. The April 27 compensation order unambiguously states that the $15,000 award discharged the employer from the payment of further compensation and closed Newkirk's case. The only summary judgment proof of a factual dispute regarding the intended scope of the compensation order was a conclusory affidavit by Newkirk. This court has held that unsupported allegations are insufficient either to support or defeat a summary judgment motion. *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985). Thus, we find that Newkirk's contention that a material factual dispute exists in the instant case is without merit.

■ Furthermore, as a matter of law, section 33(b) does not authorize partial assignment of an employee's claims arising out of an accident. The statute explicitly states that the statutory assignment encompasses "all right" of the employee to recover damages from a third party. "These words preclude the possibility that the assignment is only a partial one that does not entirely divest the employee of his right to sue, or that the employee and employer possess concurrent rights to sue or that the post-assignment period." *Rodriquez*, 451 U.S. at 603, 101

S.Ct. at 1950. Thus, Newkirk was statutorily precluded from doing what he argues he did.

### C.

■ Newkirk also claims that under principles stated in *Czaplicki v. Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), he is entitled to pursue his third-party tort claims regardless of the existence of a section 33(b) assignment. In *Czaplicki*, the Supreme Court stated:

> In giving the assignee exclusive control over the right of action, however, we think that the statute presupposes that the assignee's interests will not be in conflict with those of the employee, and that through action of the assignee the employee will obtain his share of the proceeds of the right of action, if there is a recovery. Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery....
> In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally.

76 S.Ct. at 950. According to Newkirk, the fact that IMM has failed to file any section 905(b) action against Keyes Offshore and Aminoil, coupled with IMM's continuing business relationship with the appellees, proves the existence of a conflict of interest. Newkirk concludes that because of this conflict, the *Czaplicki* exception to section 33(b) applies.

Newkirk's argument does not cross the finish line. In *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), the Supreme Court severely crippled the *Czaplicki* conflict of interest exception to section 33(b). In *Rodriguez*, the Court analyzed the legislative history of 1959 amendments to section 33(b) [4] and concluded that:

4. Prior to 1959, the employee had no six-month period in which to sue third parties, but rather assignment to the employer occurred immediately upon entry of a formal compensation order. The 1959 amendment established the cur-

rent six-month grace period before an assignment occurs. In 1984, Congress again amended this section by adding the following:

> If the employer fails to commence an action against such third party within ninety days

This history forecloses the argument that Congress did not intend an assignment of a third-party claim to be effective unless there was an absence of any potential conflict of interest between the assignee and the longshoreman.

*Id.*, 101 S.Ct. at 1955. Specifically with regard to the continuing vitality of *Czaplicki*, the Court stated:

> Whatever the continued vitality of our decision in *Czaplicki*, a question we need not and do not decide today, these cases do not involve 'the peculiar facts' on which *Czaplicki* was based. Rather, petitioners essentially have relied upon conflicts inherent in the statutory scheme and in the relationships among longshoremen, stevedores, and shipowners. . . . As our analysis indicates, the 1959 and 1972 Amendments have substantially undercut the basis for the *Czaplicki* exception to § 33(b).

*Id.* at 1958.[5] The instant case does not present the particular conflict of interest in *Czaplicki*. In *Czaplicki*, the same insurance company represented both the assignee (employer) and the potential defendants. Here, in contrast, we have the same sort of conflict that existed in *Rodriguez*, i.e., a conflict inherent in the statutory scheme of the LHWCA. Thus, Newkirk's contention that *Czaplicki* rather than *Rodriguez* applies leaves us unpersuaded.[6]

## ·III

Since this court has rejected Newkirk's challenge to the district court's grant of summary judgment, we do not reach the appellees' cross-appeal issue.

## IV

Newkirk has failed to show this court a genuine issue of material fact which would have barred the court from granting summary judgment. Moreover, the district court properly found that Newkirk's failure to assert his claims within the six-month period authorized in section 33(b) of the LHWCA resulted in assignment of Newkirk's claims to IMM, thus barring his right to assert them. For these reasons, the judgment of the district court is

AFFIRMED.

---

after the cause of action is assigned under this section, the right to bring such action shall revert to the person entitled to compensation. For the purposes of this subsection, the term "award" with respect to a compensation order means a formal order issued by the deputy commissioner, an administrative law judge, or Board.

33 U.S.C. § 933(b). Thus, in the post-1984 LHWCA statutory scheme, the employee retains the cause of action for six months after a formal compensation order has been executed. After six months, the cause of action is assigned to the employer. If the employer fails to commence an action within ninety days of possessing the assigned cause of action, the cause of action reverts back to the employee.

5. The appellees contend that the *Czaplicki* exception no longer exists. While some support exists for such a broad conclusion based on *Rodriguez, see Johnson v. Bechtel Assoc. Prof. Co.*, 717 F.2d 574, 586–87 (D.C.Cir.1983), *rev'd on other grounds sub nom. Washington Metro-politan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984) ("we conclude that the *Czaplicki* exception no longer permits an employee to institute a third-party action after the six-month statutory window"), we are able to decide the instant case based solely on *Rodriguez*, and thus have no need to determine whether the limited vitality of *Czaplicki* survives.

6. Newkirk also contends that any section 33(b) assignment that did occur was invalid because "Newkirk was never advised of any possible assignment of all of his rights nor did he ever receive notice that unless he filed suit within six (6) months his claim would be assigned." Newkirk cites *Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983). Contrary to Newkirk's contention, *Pallas* offers no support for Newkirk's purported "actual notice" prerequisite to a section 33(b) assignment, as that case dealt with voluntary payments by an employer without obtaining a formal compensation order.