Theodore CUNNINGHAM, Appellant,

v.

GEORGE HYMAN CONSTRUCTION
CO. & Superior Iron Works,
Inc., Appellees.

No. 91–50.

District of Columbia Court of Appeals.

Argued Dec. 17, 1991.

Decided Feb. 19, 1992.

Alan J. Ackerman, Washington, D.C., for appellant.

James G. Healy, Rockville, Md., for appellee Superior Iron Works, Inc.

Edwin A. Sheridan, Washington, D.C., for appellee George Hyman Const. Co.

Before TERRY, STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

Under the District of Columbia Workers' Compensation Act of 1979 (the "Act"),[1] an injured worker is not put to an immediate election between receiving compensation under the Act from his or her employer or attempting to recover damages against some third person allegedly liable for the injury. However, once the worker accepts compensation "under an award in a compensation order," he or she must file suit against that third person within six months thereafter or effectively[2] lose the right to do so. D.C.Code § 36–335(a), (b) (1988).

1. D.C.Code §§ 36–301 et seq. (1988).

2. Failure to file suit within the six-month period results in an assignment to the employer of all rights of the employee against the third party. This makes it possible for the employer to recover from the third party compensation for

■ The issue in this appeal is precisely when that six-month period begins to run. The trial court held that the triggering point is an award covering any part of the claimed disability, such as the temporary disability award here. Appellant argues that the period should not begin to run until the worker accepts a final and comprehensive award for all disabilities compensable under the Act. However, the controlling statutory language dictates the result reached by the trial court. We therefore affirm the grant of summary judgment against appellant.

## I

■ On October 10, 1984, appellant Theodore Cunningham suffered disabling injuries from a falling brick while he was working as an employee of Superior Iron Works, Inc. ("Superior"), a subcontractor of Hyman Construction Co. ("Hyman"), the general contractor at the work site. Following his injury, Cunningham filed a workers' compensation claim under the 1979 Act when a dispute developed over the computation of Cunningham's "average weekly wage." D.C.Code § 36–311(a)(4) (1988 Supp.). On April 17, 1986, the Department of Employment Services (DOES) issued a final order covering Cunningham's temporary total disability for the period October 10, 1984, through June 18, 1985.[3] Subsequently, on October 11, 1988, DOES issued an order approving Cunningham's lump-sum insurance settlement for permanent partial disability, pursuant to D.C.Code § 36–308(8).[4]

In the meantime, on September 18, 1987, Cunningham commenced the present negligence action against Hyman, which in turn filed a third-party complaint against Superior. It is not contested that the action was brought more than six months after Cunningham had accepted compensation under the DOES order of April 17, 1986, covering temporary disability benefits. The trial court granted summary judgment in favor of Hyman and Superior on December 6, 1990, holding that the Act barred Cunningham from seeking damages of any kind from a third party because he had failed to institute suit within six months after receiving compensation pursuant to an award governing any part of his disability.

In doing so, the trial court rejected Cunningham's argument that the six-month period should not begin to run until the worker accepts a final and comprehensive award for disability compensable under the Act and that the DOES order of April 17, 1986, which addressed only temporary disability, was insufficient in scope to trigger the statute of limitations in his case. In the alternative, appellant also argued that, even if any third-party claim with respect to temporary disability were time-barred, nevertheless a distinct claim with respect to damages for permanent disability, not the subject of the first award/order, would not be barred under the statute. He presents these same arguments to us for resolution on appeal.

## II

### A

We begin with an examination of the precise relevant language, mindful of the

payments made to the employee under the Act. See note 5 *infra*.

**3.** Payments had previously been made to Cunningham, but on the basis of a lower average weekly wage, which he successfully contested. The parties had stipulated that "[t]he only issue to be decided by the Office of Worker's Compensation at this time is the average weekly wage of the claimant." On this basis, Cunningham suggests that the order here was something less than an "award in a compensation order filed with the Mayor," within the meaning of D.C.Code § 36–335(b). We see no merit in this assertion. The order is a "Final Compensation Order" entered pursuant to the procedures pro-

vided in the Act. An order, like a judgment, is no less formal or final simply because most of the relevant facts are stipulated. *Cf. Rodriguez v. Compass Shipping Co.,* 451 U.S. 596, 598 n. 3, 101 S.Ct. 1945, 1948 n. 3, 68 L.Ed.2d 472 (1981).

**4.** Subsection 308(8) provides: "In any case where the Mayor determines that it is in the best interest of an injured employee entitled to compensation … he may approve lump-sum settlements agreed to in writing by the interested parties, discharging the liability for the employer for such compensation…. Such settlements are to be the complete and final dispositions of a case and once approved require no further action by the Mayor."

maxim that "if the words are clear and unambiguous, we must give effect to [the statute's] plain meaning." *James Parreco & Son v. District of Columbia Rental Housing Comm'n,* 567 A.2d 43, 45 (D.C. 1989). Section 36–335 of the Act provides in relevant part:[5]

(a) If, on account of a disability or death for which compensation is payable under this chapter, the person entitled to such compensation determines that some person ... is liable for damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation under an award in a compensation order filed with the Mayor shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within 6 months after such award.

A straightforward reading of this statutory language supports the conclusion that the six-month period is brought into play by acceptance of compensation under any award. Subsection (b) speaks of "an" award and "a" compensation order and provides no limiting adjective in either case. This language is in marked contrast, for example, to that used elsewhere in the statute in section 308(8), speaking of settlements which are "complete and final dispositions of the case." See note 2 *supra.*

The language of the statute is equally unambiguous in providing that, after the six-month period has elapsed without the commencement of a third-party claim by the worker, "all rights" to recover damages against such third party are automatically assigned to the employer. Subsection 335(a) preserves the employee's right to bring suit against a third party "on account of a disability or death for which compensation is payable under this chapter." In turn, "disability" is defined by the statute as "physical or mental incapacity because of injury which results in the loss of wages." D.C.Code § 36–301(8) (1988 Repl.). Nothing suggests that the "injury" or the "disability" resulting therefrom is to be subject to temporal division for purposes of application of the assignment provision, any more than it would be in an action against the third person.

Appellant has not adduced, nor can we find, any evidence of contrary legislative intent in the materials leading to the passage of the Act in 1979. Moreover, a review of the development of the antecedent federal statute, the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"),[6] over the decades since its enactment in 1927 is informative. It reveals that the right of injured workers to elect remedies has been the subject of gradual but decidedly conservative expansion.

In *Rodriguez v. Compass Shipping Co.,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), the Supreme Court summarized the development to that point as follows:

As originally enacted in 1927, the Act [LHWCA] gave an injured longshoreman the right to elect between the certain recovery of compensation from his employer without any proof of fault, or the less certain, but probably more generous, remedy of an action for damages against a negligent third party.... [T]he longshoreman could pursue either remedy but not both, and nothing more than the acceptance of compensation was required to evidence the employee's election [ef-

---

**5.** Subsequent provisions of § 36–335 deal with the employer's rights as the assignee, in particular, the division between the employer and the employee of any recovery against the third party. There is no requirement, however, that the employer bring a third-party action. See note 7 *infra.*

**6.** *33 U.S.C. §§ 901 et seq.* (1988). D.C.Code § 36–335(a), (b) is *substantially the same as* §§ 933(a)–(b) of the LHWCA prior to its 1984

amendment by Congress, discussed *infra.* The LHWCA applied to all workers in the District of Columbia until it was superseded by the District of Columbia Workers' Compensation Act of 1979. *Triplett v. George Hyman Const. Co.,* 565 A.2d 83, 84–85 (D.C.1989). For a comprehensive overview of subrogation regimes under various workers' compensation acts, see 2A LARSON'S WORKMEN'S COMPENSATION LAW §§ 74.00 *et seq.* (1990).

fecting an immediate assignment of his negligence cause of action].

In 1938, Congress amended the Act to provide that the acceptance of compensation would operate as an assignment only if the payment was "under an award in a compensation order filed by the deputy commissioner." This procedural change was designed to protect the employee from the harsh consequences of an improvident election.... [*Id.* at 604–05, 101 S.Ct. at 1951.]

\* \* \* \* \* \*

In 1959, Congress acted to remedy the problems created by the potential conflict between the interests of the employer and the employee in prosecuting third-party claims ... by amending § 33(b) to postpone the assignment by operation of law until six months after the acceptance of compensation under an award.... The effect of the 6–month provision, of course, was to give the longshoreman an unqualified right to bring a third-party action during the 6–month period. [*Id.* at 610–11, 101 S.Ct. at 1954.]

Thus, an original provision that made the acceptance of any compensation whatever an election to limit recovery to the LHWCA had evolved by steps into a provision requiring the greater formality of acceptance of an award pursuant to an order and giving the worker a six-month period thereafter within which to pursue a third-party claim. In particular, the purpose of the 1938 amendment, requiring "an award in a compensation order filed by the deputy commissioner," was "to cause the employee to focus on the consequences of acceptance" by alerting the employee, through "some official action," to his loss of the right to bring suit against a third party. *Hernandez v. Costa Armatori, S.P.A.*, 467 F.Supp. 1064, 1066 (E.D.N.Y.1979) (citing H.R. REPORT No. 1945, 75th Cong., 3d Sess. (1938)); *see also Toomey v. Waterman S.S. Corp.*, 123 F.2d 718, 720–21 (2d Cir.1941). Subsequently, the six-month period for the

election of remedies was introduced. However, as the Supreme Court noted, "[n]othing in the 1959 amendments purports to preserve the employee's right to commence a third-party suit after the 6–month period expires." *Rodriguez, supra*, 451 U.S. at 611, 101 S.Ct. at 1955.[7]

B

Our case law involving this subsection of the Act also supports, if not compels, a plain meaning interpretation. In *Triplett v. George Hyman Const. Co.*, 565 A.2d 83 (D.C.1989), the trial court had granted summary judgment against a worker on the ground that the six-month period had run. DOES had issued a Final Compensation Order on February 3, 1986, awarding the worker "partial disability benefits from November 4, 1984, to the present and continuing." Immediately following the issuance of the order, the worker received retroactive payments from his employer for the period between November 5, 1984, through January 20, 1986. He began receiving biweekly payments of $434.06 on February 3, 1986. However, because of an accounting error, an additional retroactive payment was made and received on October 14, 1986.

On February 4, 1987, one year after the order was issued, the worker filed a negligence action against three third parties. The worker claimed that this action was timely because it was brought within six months after receipt of the final retroactive payment made to him on October 14, 1986, and not until then had he actually "accepted" the awarded compensation. We rejected this argument, concluding that the trial court "properly declined appellant's invitation to eschew the simple and definite manner of marking the commencement of the six-month time period."

Likewise here, the statute is most naturally read to provide a "simple and definite manner" for triggering the six-month period with any formal award, rather than

---

**7.** In 1984, Congress further modified the LHWCA by adding a provision in section 33(b) that if the employer failed to commence a third-party action within ninety days after the assignment, the right to bring the action would revert to the worker. No such amendment has been made in the local Act.

leaving the issue open and dependent upon some perhaps problematical award.[8] While it is true that the worker at the time of suit may not know with certainty the full amount of his recovery under the Act, neither did the worker in *Triplett,* and yet we held the statute had begun to run.[9] In *Triplett,* we found that, for purposes of the statute, "acceptance" of compensation was marked by any acceptance of compensation pursuant to a formal award rather than receipt or knowledge of the last dollar of compensation. Moreover, in *Triplett,* the relevant compensation order encompassed partial disability benefits "to the present and continuing." Thus, it is a consistent reading of the statute that neither acceptance of compensation nor an underlying award order itself need be comprehensive, complete or fully dispositive of the case in order to trigger the commencement of the six-month period.[10]

This is not to suggest that appellant's theory that a worker should be in a position to gauge the full extent of his injuries and compensation under the Act before deciding whether to proceed against a third-party is irrational. An intermediate New York court, interpreting Section 933 of the LHWCA prior to the 1984 amendment,[11] determined that an interim award should be insufficient to trigger the running of the assignment statute because, until a final award, the worker would be "in the dark." *Gray v. Rederi A/S Myren,* 87 A.D.2d 413, 452 N.Y.S.2d 47, 49 (App.Div.1982).[12] A sentence by way of dictum of the Supreme Court might be read in a manner providing support for this position. *See Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 538, 103 S.Ct. 1991, 1996, 76 L.Ed.2d 120 (1983).[13] Nonetheless, for the reasons discussed above, we conclude that the straightforward reading of our statute must control.

*Affirmed.*

---

**8.** Compensation under the Act is paid without an award except where liability to pay compensation is controverted by the employer. D.C.Code § 36–315(a).

**9.** In tort suits, a plaintiff may not know the full extent of his damages before being required to file suit under the statute of limitations. *See, e.g., Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C. 1989) (for limitations purposes, cause of action generally accrues at time of injury); *Baker v. A.H. Robins Co.,* 613 F.Supp. 994, 996 (D.D.C. 1985) (law of limitations requires only that plaintiff have "inquiry notice of the existence of a *cause of action* for personal injury," though not necessarily comprehending "all possible sequelae") (emphasis in original).

**10.** Appellant suggests that this reading of the statute will lead to a pernicious litigation explosion through the filing of protective suits. The almost total dearth of cases on the point in question indicates that this concern may be overplayed, and in any event, it is a consideration better reserved for the legislature.

On the issue of the divisibility of a claim for purposes of application of the six-month period, *see Newkirk v. Keyes Offshore, Inc.,* 782 F.2d 499 (5th Cir.1986). There, the court rejected the injured employee's argument that compensation payments were made only for shoulder injuries he suffered in a fall, and did not bar his suit (brought after the six-month period had run) against a third party for head injuries suffered in the same fall. The court found that, "as a matter of law, section 33(b) does not authorize partial assignment of an employee's claims arising out of an accident." *Id.* at 502; *see also Rodriguez, supra,* 451 U.S. at 603, 101 S.Ct. at 1950.

**11.** See note 7 *supra.*

**12.** The New York court cited to *Verderame v. Torm Lines,* 670 F.2d 5 (2d Cir.1982), relied on by appellant here, along with *Kirsch v. Bangladesh Shipping Co.,* 544 F.Supp. 83 (E.D.Pa.1982). However, while containing language favorable to appellant's position, these two cases deal with the acceptance of interim payments absent a formal award order, unlike the situation here.

**13.** "The requirement of a formal compensation order enhances an injured longshoreman's opportunity to make a well-considered decision whether to bring an action against a third party by allowing him to delay his decision until the amount of compensation to which he is entitled under the Act is clearly established in a judicially enforceable order." *But cf. Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) ("[W]ords of our opinions are to be read in the light of the facts of the order under discussion.... General expressions transposed to other facts are often misleading".)