**Forman FRIEND, Plaintiff,**

v.

**ANCILLIA SYSTEMS INCORPORATED, an Illinois not-for-profit corporation, Defendant.**

**No. 99 C 3895.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 21, 1999.

970

Richard J. Cochran, David Ryan Shannon, Tenney & Bentley, Chicago, IL, for Forman Friend, plaintiff.

Joseph J. Duffy, Jonathan M. Cyrluk, William Paul Ziegelmueller, Stetler & Duffy, Ltd., Chicago, IL, for Ancilla Systems Incorporated, an Illinois not-for-profit corporation, defendant.

## MEMORANDUM OPINION
## AND ORDER

GETTLEMAN, District Judge.

Plaintiff Forman Friend has filed a four count complaint against his former employer, Ancillia Systems Inc., alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and state law claims for breach of contract and unpaid wages under the Indiana Code. The court's jurisdiction is alleged under 28 U.S.C. § 1331 based on the ERISA and FCRA claims. Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), arguing that plaintiff cannot establish either an ERISA or FCRA claim, leaving only state law claims. For the reasons set forth below, defendant's motion is granted.

### Background

Defendant is a not-for-profit corporation that provides support services to affiliated hospitals and other affiliated health care providers. Defendant is sponsored by the Poor Handmaids of Jesus Christ ("PHJC"), a religious order affiliated with the Roman Catholic Church. The PHJC appoints all members of defendant's board of directors and three of those including the chairperson, are religious sisters of the PHJC. Defendant's board of directors must obtain prior approval from the PHJC on all major decisions. The PHJC, defendant, and each of the five hospitals that it operates are listed in the Official Catholic Directory.

On September 13, 1997, defendant hired plaintiff as its Chief Financial Officer. Pursuant to the terms of plaintiff's employment agreement, plaintiff's compensation was comprised of: 1) base compensation; 2) incentive compensation and; 3) additional retirement benefits (later memorialized as the Selective Executive Retirement Program ("SERP")). The agreement further provided that if plaintiff's employment was terminated by defendant after a "transition event" as defined in the agreement, for any reason other than for cause, plaintiff would receive as severance his base compensation and incentive compensation for 24 months from the date of termination. In addition, plaintiff would be entitled to payments under the SERP. If, however, plaintiff was terminated for cause, defendant would have no obligation to pay plaintiff any amounts, and plaintiff would forfeit any rights he may have had under the SERP. Defendant terminated plaintiff in June 1999, after a transition event, allegedly for cause, asserting that plaintiff had breached his fiduciary duties, acted contrary to defendant's code of conduct, and otherwise breached the employment agreement.[1]

### Discussion

Defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) arguing that the court does not have subject matter jurisdiction over this case. Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. Rule 12(b)(1) motions are premised on either facial or factual attacks on jurisdiction. *Villasenor v. Industrial Wire & Cable, Inc.,* 929 F.Supp. 310, 311 (N.D.Ill.1996). If defendant makes a factual attack on the plaintiff's assertion of subject matter jurisdiction, it is proper for the court to look beyond the jurisdictional allegations in the complaint, and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993). To withstand such a motion, plaintiff must put forth "competent proof" that the court has subject matter jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 237 (7th Cir. 1995). Put another way, the plaintiff must prove by "a preponderance of the evidence, or proof to a reasonable probability that jurisdiction exists." *Id.*

---

1. Plaintiff filed suit on June 11, 1999, claiming that defendant wrongfully terminated him for cause. Defendant asserts that it did not actually fire plaintiff until June 15, 1999.

### ERISA

Plaintiff first attempts to establish subject matter jurisdiction by arguing that the severance benefits to which he claims entitlement constitute an ERISA Plan, and that defendant's breach gives rise to a claim under § 502 of ERISA, 29 U.S.C. § 1132. Defendant challenges this assertion, arguing that even if the SERP is an ERISA Plan, it is a "church plan," which is specifically excluded under Title I of ERISA, including the civil remedies contained in § 502.

29 U.S.C. § 1003(b) provides that the provisions of Title I of ERISA "shall not apply to any employee benefit plan if—(2) such plan is a church plan (as defined in § 1002(33) of this Title) with respect to which no election has been made under § 410(d) of Title 26." A church plan is defined as "a plan established and maintained (to the extent required in clause (ii) in subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under § 501 of Title 26." 29 U.S.C. § 1002(33)(A). In addition, 29 U.S.C. § 1002(33)(C)(i) provides that:

> A plan established and maintained for its employees (or their beneficiaries) by a church or a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principle purpose or function of which is the administration or funding of a plan or program for the provision or retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

The parties have not cited any case law, and the court has found few cases interpreting ERISA's definition of a church plan. Defendant has submitted numerous Department of Labor opinion letters that set forth the factors reviewed by that department to determine if an organization qualifies for church plan status. Those factors include whether: a religious order or congregation controls the entities sponsoring the plan; the operation of the organization furthers the goals of the religious order; the entity and/or the religious order are listed in an official religious directory; the organization is a not-for-profit tax exempt entity pursuant to § 501 of the Internal Revenue Code; and members of the religious order sit on the board of directors of the organization. *See generally* ERISA Opinion Letter No. 95–10A, 1995 ERISA LEXIS 12 (June 16, 1995) (church plan status given to St. Joseph's University of Pennsylvania, which is operated by the Society of Jesus); ERISA Opinion Letter No. 94–04A, 1994 ERISA LEXIS 4 (February 17, 1994) (church plan status given to healthcare system controlled by a religious order); ERISA Opinion Letter No. 90–13A 1990 ERISA LEXIS 14 (May 10, 1990) (church plan status given to college controlled by a religious order); ERISA Opinion Letter No. 90–12A, 1990 ERISA LEXIS 13 (May 10, 1990) (church plan status given to nursing center controlled by a religious order); and ERISA Opinions Letter No. 85–14A, 1985 ERISA LEXIS 32 (March 26, 1995) (church plan status given to hospital controlled by a religious order).

In the instant case, it is undisputed that defendant meets all the factors set out in the Department of Labor opinion letters. Despite this, plaintiff argues that defendant's severance plan does not qualify as a church plan because, according to plaintiff, 29 U.S.C. § 1002(33)(C)(i) requires that the plan be "administered by an organization the principle purpose of which is the administration or funding of the plan." Because the plan in question fails to designate an administrator, ERISA provides the sponsor to be the plan administrator. Therefore, under ERISA defendant is the plan administrator. Because defendant is not an organization the principal purpose of which is the administration or funding of the plan, plaintiff argues that the plan cannot qualify as a church plan.

Contrary to plaintiff's strained interpretation, however, § 1002(33)(C)(i) does not "require" that the plan be maintained by an organization the principle purpose of which is administering or funding the plan. The statute merely "includes" such plans in the definition of church plan. 29 U.S.C. § 1002(33)(C)(i). The language of the statute is clear and unambiguous and this court is unwilling to rewrite that section to be more restrictive than provided. It is a fundamental canon that "all statutory interpretation begins with the language of the statute itself, and where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir. 1996). Indeed, in *Health Cost Control v. Fuxan*, 1997 WL 725440 (E.D.La., November 17, 1997), the only case this court has found addressing this issue, the court held that even though the plan at issue was sponsored by an organization that was controlled by or associated with a church, it was not a church plan because it was administered by an independent third party administrator. *Fuxan* illustrates the intent of § 1002(33)(C)(i), which is to require that if an organization controlled by or associated with a church wants to hire an administrator for its plan, the administrator must also be controlled by or associated with the church. The section does not, however, require a third party administrator.

Next, plaintiff argues that the plan is not a church plan because "more than an insubstantial percentage of individuals who are included in the plan are employees of a for-profit business corporation" in violation of § 1002(33)(B)(ii). Plaintiff admits that six of the seven employees covered by the plan are employed by a not-for-profit corporation. The statute provides that a plan is not a church plan "if less than substantially all of the individuals included in the plan are individuals" employed by a not-for-profit corporation. The court concludes that six out of seven constitutes substantially all of the employees. To conclude otherwise would, in the instant case, impermissibly change the requirement from "substantially all" to "all." Accordingly, the court concludes that defendant's plan is a church plan exempt from enforcement under § 502 of ERISA. Therefore, the court lacks subject matter jurisdiction over the claims raised in Count I.

## FCRA

Plaintiff also attempts to assert jurisdiction based on his FCRA claim. In Count II, plaintiff alleges 'that "plaintiff is informed and believes that defendant utilized consumer reports or investigative consumer reports prepared by third parties in evaluating plaintiff's employment with defendant in determining that cause existed for plaintiff's suspension and termination . . . ." The complaint fails to set forth the basis for that information and belief. Plaintiff further alleges that defendant failed to make copies of such consumer reports available to plaintiff, failed to inform plaintiff of his rights under the FCRA, and failed to provide plaintiff's attorney copies of such reports after being asked. According to plaintiff, this amounts to a willful violation of the FCRA.

15 U.S.C. § 1681a(d)(1) defines a consumer report as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(B) employment purposes." A consumer reporting agency is defined as "any person which, for monetary fees, dues, or a cooperative non-profit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or

furnishing consumer reports." 15 U.S.C. § 1681a(f).

In the instant case, plaintiff argues that defendant hired its attorneys, Stetler & Duffy, to investigate plaintiff. Stetler & Duffy then hired Ernst & Young to evaluate plaintiff and determine if there was cause to fire him. Therefore, according to plaintiff, both Stetler & Duffy and Ernst & Young are consumer reporting agencies.

Plaintiff, however, has failed to produce any competent proof that either Stetler & Duffy or Ernst & Young "regularly engages in the practice of assembling credit information." Indeed, plaintiff has presented no evidence that either Stetler & Duffy, or Ernst & Young has ever before or since created reports of the kind at issue in the instant case. Therefore, there is no evidence that either is a "consumer reporting agency" as defined by the FCRA.

Additionally, even if the employer were considered to be the reporting agency, it is undisputed that any report made in the instant case involved plaintiff's transactions or experiences as defendant's CFO. A report containing information solely as to transactions or experiences between the consumer and the person making the report is specifically excluded from the term "consumer report." 15 U.S.C. 1681a(d)(2)(A)(i). Therefore, even if defendant is considered to be the reporting agency, any report generated would be excluded from the definition of a consumer report. Accordingly, plaintiff has not submitted competent proof that jurisdiction arises under the FCRA.

Because the court lacks federal question jurisdiction over Counts I or II, and there is no independent basis for subject matter jurisdiction over the state law claims, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) is granted.