Maria STAPLETON et al., on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Advocate Plan, Plaintiffs,

v.

ADVOCATE HEALTH CARE NETWORK and Subsidiaries, et al., Defendants.

No. 14 C 01873

United States District Court, N.D. Illinois, Eastern Division.

Signed December 31, 2014

James B. Zouras, Ryan F. Stephan, Stephan, Zouras, LLP, Chicago, IL, Bruce F. Rinaldi, Karen L. Handorf, Mary Joanne Bortscheller, Michelle C. Yau, Cohen Milstein Sellers & Toll PLLC, Washington, DC, Erin M. Riley, Havila C. Unrein, Lynn Lincoln Sarko, Keller Rohrback, LLP, Seattle, WA, for Plaintiffs.

David Benjamin Goodman, Courtney A. Adair, Greensfelder, Hemker & Gale, P.C., Chicago, IL, Amy L. Blaisdell, Daniel J. Schwartz, Heather M. Mehta, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for Defendants.

MEMORANDUM OPINION AND ORDER

Honorable EDMOND E. CHANG, United States District Judge

This action raises a question that has divided federal courts in recent years:

whether religiously affiliated employers like hospitals and charities are exempt from federal regulation of their employee-benefits plans based on a statutory exemption created for churches. Plaintiffs are current and former employees of Defendant Advocate Health Care Network, a non-profit corporation affiliated with two Christian denominations. Advocate is Illinois's largest health-care provider. Plaintiffs allege that Advocate has not maintained its pension plan according to standards set by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and seek money damages and equitable relief. R.1, Compl.[1] Alternatively, Plaintiffs seek declaratory relief that ERISA's "church plan" exemption violates the First Amendment's Establishment Clause.

Advocate has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), R. 34, Mot. Dismiss, arguing that its plan falls within the church plan exemption, which Advocate further asserts is constitutional as a matter of law. As explained in detail below, because statutory analysis reveals that the Advocate plan does not qualify as a church plan and is instead fully subject to ERISA's requirements, the motion is denied. The Court accordingly need not address Plaintiffs' constitutional challenge.

## I.

Advocate operates 12 hospitals and more than 250 other inpatient and outpatient healthcare locations across northern and central Illinois, employing 33,300 people and generating $4.6 billion in annual revenue. Compl. ¶ 19.[2] It was formed in 1995 as a 501(c)(3) non-profit corporation and it competes with other nonprofit as well as for-profit conglomerates in the commercial healthcare market. *Id.* ¶¶ 6, 40. Although it is affiliated with the United Church of Christ and the Evangelical Lutheran Church in America, Advocate is not owned or financially supported by either church. *Id.* ¶¶ 48–50. Advocate maintains a non-contributory, defined-benefit pension plan that covers substantially all of its employees. *Id.* ¶ 58.

Plaintiffs Maria Stapleton, Judith Lukas, Sharon Roberts, and Antoine Fox are former and current Advocate employees with vested claims to benefits under that plan. *Id.* ¶¶ 14–17. They have brought their complaint as a proposed class action on behalf of all participants or beneficiaries of the Advocate plan. *Id.* ¶ 108. Plaintiffs allege that by unlawfully operating the plan outside the scope of ERISA, Advocate breached its fiduciary duties and harmed the plan's participants by: requiring an improperly long period of five years of service to become fully vested in accrued benefits; failing to file reports and notices related to benefits and funding; funding the plan at insufficient levels; neglecting to provide written procedures in connection with the plan; placing the plan's assets in a trust that do not meet statutory requirements; and failing to clarify participants' rights to future benefits. *Id.* (Counts One–Nine). Alternatively, even if Advocate can evade liability on these counts under the church plan exemption, Plaintiffs allege that this provision of

---

1. The Court exercises subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Citations to the docket are noted as "R." followed by the entry number and a description of the document.

2. Advocate is one of a number of parties named as defendants, including 60 Jane Does, for alleged involvement in the administration of the Advocate Plan. For the sake of convenience, the Court will refer to the defendants, who move together to dismiss the complaint, collectively as "Advocate."

ERISA is void as an unconstitutional violation of the First Amendment's prohibition on state establishment of religion. *Id.* (Count Ten). They therefore seek a declaration that the Advocate plan is a benefits plan covered by ERISA, or in the alternative, a declaration that the church plan exemption is unconstitutional, as well as an injunction requiring Advocate to reform the plan to comply with ERISA's requirements and an award of civil penalties. *Id.* (Prayer for Relief).

## II.

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2079, 179 L.Ed.2d 1149 (2011). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, and are entitled to an assumption of truth only so long as they are factual in nature, rather than mere legal conclusions. *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937.

Rule 12(b)(1) provides the procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir.2009). Although Advocate premises its motion to dismiss on both a failure to state a claim under Rule 12(b)(6) and a lack of subject matter jurisdiction under Rule 12(b)(1), only the former is at play here.

█ It is true that in the past some courts portrayed dismissals of ERISA claims based on exempt plans as dismissals for want of "jurisdiction"—if the plan itself falls outside the scope of federal law, the thinking went, a federal court cannot entertain actions raised against it. *See, e.g., Tinoco v. Marine Chartering Co.,* 311 F.3d 617, 623 (5th Cir.2002) ("Where ... evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction.") (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994)). But the Supreme Court and the Seventh Circuit have instructed in recent years that courts must take care not to conflate a jurisdictional threshold with a plaintiff's initial burden to state a plausible claim.[3] To ask whether a federal law like ERISA reaches a certain actor or conduct in the first place is itself a *merits* question, not a jurisdictional one. *See Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 254, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010); *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Thus, where an action concerns allegations about a benefit plan's potential liabilities under federal law, "[a] federal district court is the right forum for a dispute about the meaning of ERISA." *NewPage Wisconsin Sys. Inc. v. United Steel, Paper &*

---

3. The distinction is not just semantic. Courts must be careful to frame defects as going to subject matter jurisdiction only where appropriate, given that subject matter jurisdiction flaws (unlike problems with pleadings) can never be waived. *See Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).

*Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL–CIO/CLC,* 651 F.3d 775, 777 (7th Cir.2011) ("Whether a claim is good differs from the question whether a district court possesses jurisdiction, a matter of adjudicatory competence."); *see also Smith v. Reg'l Transit Auth.,* 756 F.3d 340, 345 (5th Cir.2014) (surveying case law in five circuits holding that whether benefits plan is exempt under ERISA implicates not jurisdiction but an element of claim). The test then for Plaintiffs' complaint is not whether it properly ·invokes jurisdiction, which it does, but rather whether it states a plausible right to relief in light of Advocate's claimed church plan exemption.

### III.

#### A.

ERISA was enacted in 1974, Pub. L. No. 93–406, 88 Stat. 829 (1974), to protect "the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements" for the plans. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (internal quotation marks and citations omitted). Although nothing in ERISA requires employers to create benefits plans in the first place or mandates any specific benefit that must be provided, the law seeks "to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink,* 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (citations omitted); *see also Sullivan v. CUNA Mut. Ins. Soc'y,* 649 F.3d 553, 560 (7th Cir.2011) ("ERISA was enacted to protect employees from employers who mismanaged or even looted funds set aside to provide employee benefits—both pension plans and welfare plans.") (citing *Shaw v. Delta Air Lines,*

*Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

Congress explicitly exempted certain types of plans from the scope of ERISA, including those set up by federal, state, local, or tribal governments, 29 U.S.C. §§ 1002(32), 1003(b)(1), as well as any "church plan," 29 U.S.C. §§ 1003(b)(2). Section 1002(33)(A) of Title 29 states that a church plan is "a plan established and maintained ... for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax [ ]." 29 U.S.C. § 1002(33)(A). Subsection 33(C) then adds:

(C) For purposes of this paragraph—

(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

(ii) The term employee of a church or a convention or association of churches includes—

· · ·

(II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax [ ] and which is controlled by or associated with a church or a convention or·association of churches[.]

29 U.S.C. § 1002(33)(C). The survival of Plaintiffs' action turns on whether the Ad-

vocate plan, as a matter of law, qualifies as a "church plan" under the terms of this statutory thicket.

### B.

Advocate does not contend that it itself is a church, nor does it claim that a church or an association of churches initially established its pension plan. But Advocate is convinced that its plan qualifies under the plain language of subsection 33(C)(i), which sweeps into the exemption "a plan maintained by" a qualifying corporation. R. 35, Defs.' Br. at 12–15. Plaintiffs respond that subsection 33(C)(i) is not the safe harbor Advocate believes it to be, because its inclusion of plans "maintained" by a corporation does nothing to change the underlying requirement, articulated in subsection 33(A), that the plan must still be "established" by a church. R. 46, Pls.' Resp. Br. at 7–13. This issue has generated conflicting federal-court decisions and remains an open question in this Circuit. After reviewing the case law and employing the various tools of statutory interpretation available for guidance, the Court concludes that the Advocate plan is not a church plan.

### 1.

The Court begins, as it must in all cases of statutory construction, with the language of the statute. *See, e.g., Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The "first step ... is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Where Congress's intent is clear from that language, it must be given effect." *Arobelidze v. Holder,* 653 F.3d 513, 518 (7th Cir.2011) (citing *Chevron, U.S.A., Inc. v. Natural*

*Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ Subsection 33(A) defines a church plan as a "plan established *and* maintained" by a church. 29 U.S.C. § 1002(33)(A) (emphasis added). So far, the meaning is straightforward. Two separate elements must both be met for the exemption to apply: a church must first create (establish) the plan and then run (maintain) the plan. If the statute stopped there, then Advocate would clearly lose: *Advocate* established its plan, and therefore its plan was not established by a *church.* The statute, however, goes on and provides a basis for Advocate's argument, although ultimately an unpersuasive one. It is worth again setting forth subsection 33(C)(i), though this time, with a focus on the italicized prefatory text:

(i) *A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches* includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33)(C)(i). The prefatory text should look familiar because it is essentially word-for-word the same as the definition of a "church plan" in subsection 33(A): a "'church plan' means a plan established and maintained ... for its employees (or their beneficiaries) by a church or by a convention or association of churches ..." § 1002(33)(A). So subsection 33(C)(i), in a roundabout way, in effect starts out by saying, "A church plan...."

Advocate points out that, continuing on with subsection 33(C)(i)'s text, a church plan "includes a plan *maintained* by an organization," so long as that organization is associated with or controlled by a church and functions to administer a plan for church employees. 29 U.S.C. § 1002(33)(C)(i) (emphasis added). In Advocate's view, this provision "expands the definition of church plan" so that if an otherwise qualifying organization simply *maintains* the plan, it has fully satisfied all of subsection 33(A)—even though the plan was not also *established* by a church. Defs.' Br. at 13.

But this reading tries to make the statutory language say something it does not. Subsection 33(C)(i)'s use of the word "includes" (as in, "includes a plan maintained by an organization") means that it identifies a *subset* of plans that qualify for the church plan exemption as defined by subsection 33(A)—specifically, plans need not be maintained by a church, and instead may be maintained by a church-affiliated corporation. Note, however, that subsection 33(C)(i) says nothing about a plan *established* by an affiliated organization. If, as Advocate would have it, a plan could qualify solely on the basis of being maintained by a non-church entity (the second element of subsection 33(A)), the "established by" requirement (the first element of subsection 33(A)), which is a separate, independent requirement under the terms of subsection 33(A), would become meaningless. That reading, therefore, violates a "cardinal principle of statutory construction ... to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section." *Bennett v. Spear*, 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations and quotation marks omitted); *accord United States v. Natour*, 700 F.3d 962, 973 (7th Cir.2012) ("[C]ourts should strive to give meaning to every word and should reject any interpretation that renders any portion of the statute superfluous.").

As another district court writing on this issue recently noted, if "all that is required for a plan to qualify as a church plan is that it meet section [33(C)'s] requirement that it be maintained by a church-associated organization, then there would be no purpose for section A." *Rollins v. Dignity Health*, 19 F.Supp.3d 909, 914 (N.D.Cal. 2013) ("[This] interpretation would reflect a perfect example of an exception swallowing the rule."). Contrary to Advocate's proposed interpretation, the plain language of subsection 33(C)(i) merely adds an alternative means of meeting *one* of subsection 33(A)'s two elements—and nothing more. *See Kaplan v. Saint Peter's Healthcare Sys.*, No. 13 CV 2941, 2014 WL 1284854, at *7 (D.N.J. Mar. 31, 2014) ("The term 'includes' merely provides an alternative to the maintenance requirement but does not eliminate the establishment requirement.").[4]

For the same reason, Advocate's reliance on subsection 33(C)(ii)(II) is also misplaced. This provision, which states that employees of a qualifying, church-affiliated organization may be considered employees of a church for purposes of the exemption, operates only in the context of subsection 33(C)(i)'s modification of the "maintained by" requirement. Subsection 33(C)(ii)(II) specifies that a plan maintained by a qualifying corporation may also include employees of an affiliated, non-church organization, but like subsection 33C(i), it does nothing to render inoperative subsection 33(A)'s underlying requirement that the

---

4. Because Advocate's argument for dismissal at the pleading stage is rejected, there is no occasion to address, right now, the remaining elements listed by subsection 33(C)(i), *e.g.*, whether Advocate is associated with or controlled by a church.

plan first be established by a church. *See Rollins,* 19 F.Supp.3d at 915 ("Section C(ii) merely explains which employees a church plan may cover—once a valid church plan is established. It does nothing more."); *Kaplan,* 2014 WL 1284854, at *5 ("*Once a church plan is established* [by a church], subsection C(ii) delineates what individuals may participate in the church plan as employees of the church.") (emphasis added).

Decisions that have come to the opposite conclusion, respectfully, are not convincing. Discussing the church plan exemption in *Lown v. Cont'l Cas. Co.,* the Fourth Circuit suggested that a plan need only be established by an affiliated organization to qualify, but relied only on subsection 33(C)(i) without mentioning subsection 33(A) (arguably, the interpretation is *dictum* because *Lown* ultimately decided that the exemption did not apply on other grounds). 238 F.3d 543, 547 (4th Cir.2001) (holding that a disability plan offered by hospital is not church plan based on employer's lack of association with or control by church); *cf. Chronister v. Baptist Health,* 442 F.3d 648, 653–54 (8th Cir.2006) (same). And most of the contrary district court cases similarly do not examine subsection 33(A) looking instead at subsection 33(C)(ii) in isolation. *See Thorkelson v. Publ'g House of Evangelical Lutheran Church in Am.,* 764 F.Supp.2d 1119, 1127 (D.Minn.2011) (holding that a corporation-established plan qualifies for church-plan exemption by focusing solely on whether employer was affiliated with church under section C(i)); *Hall v. USAble Life,* 774 F.Supp.2d 953, 960 (E.D. Ark. 2011) (hospital's plan qualifies based on "ties" to Roman Catholic Church); *Rinehart v. Life Ins. Co. of N. Am.,* No. 08 CV 5486, 2009 WL 995715, at *3 (W.D.Wash. Apr. 14, 2009) (plan may qualify as church plan by "satisfy[ing] the narrower provision of § (33)(C)(i)"). Yet by premising eligibility for the exemption solely on subsection

33(C)'s criterion of whether the employer organization is properly affiliated with or controlled by a church, these courts are, in effect, taking an expansion of one element that need not even be reached (the maintenance element), as if it reformulated the original definition of the exemption and indeed removed the establishment element altogether. Compare, e.g., *Catholic Charities of Maine, Inc. v. City of Portland,* 304 F.Supp.2d 77, 85 (D.Me.2004) ("ERISA brings a plan established or maintained by a non-church organization within the general definition of 'church plan.' ") (emphasis added) with 29 U.S.C. § 1002(33)(A) (church plan is "a plan established and maintained" by a church) (emphasis added).

Two courts did address subsection 33(A), without which subsection 33(C)(i), as an elaboration on the former, makes no sense. One district court held that subsection 33C(i) could redefine the church plan definition despite subsection 33(A), because the "established and maintained" language in the latter is a "singular requirement, a term of art," rather than two distinct elements. *Medina v. Catholic Health Initiatives,* No. 13 CV 01249, 2014 WL 4244012, at *2–3 (D.Colo. Aug. 26, 2014) (overruling Report and Recommendation of Magistrate Judge). In another case, *Overall v. Ascension,* the district court took the same tack, holding that a plan thus meets all of subsection 33(A) collectively so long as it meets subsection 33C(i)'s maintenance requirement. 23 F.Supp.3d 816, 829 (E.D.Mich.2014). But neither of these cases explain why "established and maintained" should be read as a singular term of art when, as a matter of grammar and practice, those two words have separate, ordinary meanings. *See, e.g., Gonzales v. Oregon,* 546 U.S. 243, 282, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) ("We

do not force term-of-art definitions into contexts where they plainly do not fit.").

In sum, none of this contrary authority adequately explains away subsection 33(A)'s distinct requirement that a church plan must be *established* by a church.[5] Instead, as the more persuasive decisions to have recently addressed the issue have emphasized, the straightforward statutory language of subsections 33(A) and (C), particularly in the context of legislation as complex as ERISA, must be assumed to reflect deliberate choices made by Congress. *See Kaplan*, 2014 WL 1284854, at *6 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). The absence of "established" in subsection C(i), in contrast to its presence in subsection 33(A), cannot be overlooked as easily as Advocate contends. "[W]e must presume that Congress acted intentionally in using the words 'establish and maintain' in section A as something only a church can do, as opposed to the use of only the word 'maintain' in section C(i) to refer to the capabilities of church-associated organizations." *Rollins*, 19 F.Supp.3d at 915 ("To assert that any church-associated organization can establish its own church plan fails to appreciate the distinction drawn by Congress through its purposeful word choice."). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted).

This statutory-interpretation principle is particularly meaningful because, here, Advocate's proposed gloss would extend the benefits of the church plan exemption to an entirely new category of entity not envisioned by the primary definitional subsection, which is subsection 33(A). Given that ERISA is what is known as a "remedial" statute, any exemptions to which should be construed as narrowly as possible, this result would be particularly unfounded on such a tenuous basis. *See Kaplan*, 2014 WL 1284854, at *6 (citing *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 614 n. 33, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981)). If Congress had intended for the church plan exemption to apply to plans never actually set up by churches (and merely run by organizations claiming a later religious association, the terms of which are undefined in the statute), it would not have evinced that intent in such a roundabout way.

**2.**

To the extent that legislative history is relevant to statutory interpretation, the statute's history further supports the correctness of the straightforward, rather than expansive, reading of subsection 33(A) and (C) discussed above. When making sense of a statute, of course, "the authoritative statement is the statutory text," but extrinsic materials like legislative history may be considered "to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Here, although the limited scope of the church plan exemption can be

**5.** Advocate also relies repeatedly on a decision issued by another court in this District, *Friend v. Ancilla Sys. Inc.*, 68 F.Supp.2d 969 (N.D.Ill.1999). *See* Defs.' Br. at 1, 12, 15, 17, 18. But *Friend* is not nearly as relevant as Advocate suggests, holding simply that subsection 33(C)(i) does not require that a third party administrator necessarily be in charge of maintaining a benefits plan in order to meet the exemption. 68 F.Supp.2d at 973.

gleaned from the text alone, its legislative history does support the interpretation set forth above. Specifically, when ERISA was first passed in 1974, the church plan exemption was even narrower than after a later amendment; at first, the exemption comprised only "a plan established and maintained for its employees by a church or by a convention or association of churches." 29 U.S.C. § 1002(33)(A) (1976). As the district court in *Rollins*, sifting through records of testimony before Congress and versions of draft legislation, has explained in detail, this initial version created concern among a number of churches, whose benefit plans were in fact maintained not directly by them but by pension boards set up for that purpose. 19 F.Supp.3d at 916 (citing Letter from Gary S. Nash, Secretary, Church Alliance for Clarification of ERISA, to Hon. Harrison A Williams, Jr., Chairman, Senate Committee on Human Resources (August 11, 1978) and Senate committee statements). It was in response to this concern—namely, that these church-established but outsider-run plans were not in line with the exemption—that ERISA was ultimately amended to include the language now found in subsection 33(C)(i), passed in 1980 as part of the Multiemployer Pension Plan Amendments Act. *Id.*

Senator Herman E. Talmadge of Georgia, the originator of this amendment, explained that its purpose was to specify that the exemption explicitly included "church plans which rather than being maintained directly by a church are instead maintained by a pension board maintained by a church." *Id.* at 917 (quoting Senate Committee on Finance, Executive Session Minutes, June 12, 1980, at 40). By contrast, aside from including plans maintained by a non-church entity, the rest of the definition of church plan (*i.e.*, the *established-by-a-church* requirement) "would be continued." *Id.* (quoting Senate Labor and

Human Resources Committee Report on H.R. 3904, August 15, 1980); *see also* 126 Cong. Rec. H23049 (daily ed. Aug. 25, 1980) (comments by Representative Ullman on House version of bill). In other words, faced with the fact that many churches delegated the actual management of benefits plans to associated third-party entities as a practical matter, Congress moved to ensure that the church plan exemption reflected this reality. Viewed in this context, Congress's purposeful choice to limit the wording of subsection 33(C)(i) to plans maintained by eligible organizations makes perfect sense, and its omission of those established by such entities appears deliberate.

Consistent with this purpose, too, was Congress' inclusion of subsection 33(C)(ii)(II). As initially enacted, ERISA's church plan exemption included plans benefitting both employees of churches as well as those of related church agencies, but the related-church part of the exemption was set to expire in 1982. Pub. L. 93406, § 3(33)(C), 88 Stat. 829, 838 (1974). As Advocate points out, members of Congress became concerned that with the impending sunset of this provision, employees of church agencies, despite their work in roles directly tied to the mission of churches, would now fall into the reach of ERISA. Defs.' Br. at 19 (quoting 124 Cong. Rec. 12107 (May 2, 1978) (Rep. Conable)) ("Present law fails to recognize that the church agencies are parts of the church in its work of disseminating religious instruction and caring for the sick, needy and underprivileged."). Thus, subsection 33(C)(ii)(II) was enacted to extend permanently the exemption made for agency employees included within church plans. Advocate would have this amendment signify that Congress also now intended for a plan simply maintained by any self-affiliated organization to qualify (without the

need for church establishment), Defs.' Br. at 19–20, but the legislative history does not support such a broad outcome.

Advocate's brief itself acknowledges that subsection 33(C)(ii)(II) protected employees of applicable, church-related organizations but otherwise "retain[ed] the basic definition of church plan as a plan established and maintained for its employees by a church." *Id.* at 19, 104 S.Ct. 296 (quoting 124 Cong. Rec. 12107 (May 2, 1978) (Rep. Conable)). The concern was to shield employees that did not directly work for the church, but for closely related agencies, and participated in the church's established benefits plan. *See, e.g., Hall,* 774 F.Supp.2d at 959–60 (describing as church plan a pension plan for employees of hospital set up and run by Roman Catholic order of nuns). No part of the legislative record suggests an intent to allow a church-affiliated corporation to claim the exemption for a plan absent the *church's* establishment of the plan, as required by the original definition in subsection 33(A).

The takeaway from the legislative history of subsection 33(C) is that it was added to ERISA in response to very specific concerns about existing church plans and their scope. So this legislative context supports the narrow scope of the church plan exemption suggested by the straightforward text of subsection 33(C) and adopted by the Court here.

### 3.

Finally, in support of its interpretation, Advocate relies on a letter issued to it by the Internal Revenue Service (IRS), R. 35–12, Exh. L, Undated letter from John G. Riddle, Jr., opining that Advocate's plan is a church plan under the tax code provision parallel to the relevant portion of ERISA. Defs.' Br. at 20–22. Advocate argues that the IRS letter-opinion is entitled to substantial deference, particularly where, as is the case here, it has been addressed directly to, and relied upon by, a party in the litigation. *Id.* at 20, 104 S.Ct. 296. Unfortunately for Advocate, the IRS opinion is not entitled to deference and its contents do not change the outcome.

■ Agency opinions expressed in letters are not owed the type of deference, explained in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), that is owed when an administrative agency interprets a statute through formal adjudication or rulemaking with a notice-and-comment process, *see Christensen v. Harris Cnty.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citations omitted). Rather, letter-opinions are entitled to respect by courts "only to the extent that those interpretations have the 'power to persuade.'" *Id.* (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (agency enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of ... delegated lawmaking powers"). In other words, the IRS letter, which reflects merely an advisory opinion and not the product of formal adjudication or rulemaking, should be deferred to only if its interpretation of the statute is convincing. *Bankers Life & Cas. Co. v. United States,* 142 F.3d 973, 978 (7th Cir.1998) ("Neither the courts nor the IRS may rely on letter rulings as precedent."). Because the opinion relies on the same reasoning rejected above—a mistaken focus only on whether a church-affiliated organization maintains, rather than also established, the plan—it is not persuasive and is owed no deference.

### B.

Because the Court concludes that the Advocate plan does not meet the criteria of

an exempt church plan under ERISA, it need not reach Plaintiffs' argument in the alternative that the exemption provision violates the Constitution's Establishment Clause. Courts must "avoid constitutional questions if [they] can" and instead settle disputes on the basis of other, non-constitutional arguments. *United States v. Westmoreland,* 240 F.3d 618, 629 (7th Cir. 2001). The constitutional question raised here, whether Congress may permissibly create within ERISA a religious-based exemption for certain employers, must await another day for resolution as Advocate's plan does not, in any event, so qualify.[6]

### IV. Conclusion

For the reasons set forth above, because Advocate's plan is not entitled to ERISA's church plan exemption as a matter of law, Advocate's motion to dismiss is denied. The Court anticipates one of two possible courses for this litigation to now take. First, Advocate could file an answer to the complaint, which might admit all of the material factual allegations, and the Plaintiffs would respond by moving for judgment on the pleadings. Alternatively, Advocate could move for leave to file an interlocutory appeal of the denial of the motion to dismiss. Or there might be a third option that the Court has not anticipated. In any event, the parties should be prepared to discuss how best to proceed at the next status hearing, which is accelerated to January 8, 2015, at 9 a.m.

---

6. The lack of a need to address the constitutional challenge means that the intervention of the United States, which was noticed but made contingent on whether statutory arguments would be sufficient to resolve the motion to dismiss, is unnecessary. *See* R. 41, Notice of Intervention. Additionally, there is no need for the Court to consider the amicus brief of the Becket Fund on the constitutional question. *See* R. 50, Dkt. Entry (granting motion to file amicus brief only if Establishment Clause issue reached).